UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, <br> 5100 Wisconsin Ave., N.W., Suite 404, <br> Washington, D.C. 20016, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, <br> 1400 Independence Avenues, S.W., <br> Washington, DC 20250, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.   This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to obtain access to records improperly withheld by the United States Department of Agriculture ("USDA"). This is also an action under the FOIA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, challenging the USDA's policy and practice of withholding, in full, affidavits of witnesses and USDA employees that the agency gathers as part of its investigations of alleged violations of the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131, et seq., and other statutes implemented by the agency, on the ground that the disclosure of all such information – including the purely factual evidence collected by the agency – would violate the personal privacy of the witnesses.

## JURISDICTION

2.   This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331.

## PARTIES

3. Plaintiff People for the Ethical Treatment of Animals ("PETA") is the requester of the information at issue in this case. PETA, one of the largest animal protection organizations in the world, is dedicated to ending cruelty to all animals. PETA works to achieve this goal through a variety of means, including public education, cruelty investigations, research, animal rescue, legislation, special events, celebrity involvement, and campaigns. PETA routinely investigates and disseminates information about violations of statutes that provide protections for animals used in the food, entertainment, and clothing industries, as well as for research purposes, such as the AWA and the Humane Methods of Livestock Slaughter Act ("HSA"), 7 U.S.C. §§ 1901, et seq. PETA also routinely monitors the USDA's enforcement activities, and advocates for stronger protections for animals and enforcement of these laws.

4. A critical aspect of PETA's ability to accomplish these objectives has been, and continues to be, its receipt of information from the USDA under the FOIA. For example, PETA regularly requests information from the USDA under the FOIA concerning the agency's investigations of potential violations of the AWA and the HSA, and other statutes administered by the USDA. In the past, once the USDA closed an investigation of a particular incident, the agency would routinely release to PETA its investigatory report, including affidavits of USDA investigators and employees, and witnesses to the incident. Although, in the past, the USDA would redact the personal and identifying information of non-governmental witnesses, such as addresses and social security numbers – to which PETA never objected – the substance of the affidavits are frequently the primary source of information about the facts of a particular incident.

PETA regularly conveys this important information to the public by way of publications, press releases, and editorials. PETA also relies on such information to assess whether or not the USDA is adequately enforcing the laws under its jurisdiction, and to assist the agency in obtaining <u>additional</u> information that may be helpful to the USDA's enforcement activities. PETA is therefore harmed as a result of the USDA's new pattern and practice of now routinely withholding the factual portions of these statements in full, because this impairs PETA's ability to educate the public about these matters, to monitor the USDA's enforcement activities, and to advocate for better protections for animals and enforcement of animal protection statutes. The release of such information in the future would remove this impairment and, therefore, improve PETA's ability to serve its vital educational, monitoring, and advocacy functions.

5. Defendant USDA is the federal agency in possession and control of the information that was requested by PETA. It has adopted, and is implementing, the new practice of routinely withholding under the FOIA witness affidavits in their entirety.

## STATUTORY FRAMEWORK AND FACTS GIVING RISE TO PLAINTIFF'S CAUSE OF ACTION

### The Freedom Of Information Act

6. The FOIA requires agencies of the federal government to make information available to the public, upon request, unless one of nine specific statutory exemptions applies to such information. 5 U.S.C. §§ 552(a)(3)(A), 552(b).

7. Upon receiving a FOIA request, an agency has twenty working days to provide the requested information or assert that it is exempt from disclosure. <u>Id.</u> § 552(a)(6)(A).

8. Under Exemption 5 of the FOIA, an agency may withhold "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Id. § 552(b)(5).

9. Under Exemption 6 of the FOIA, an agency may withhold "personnel and medical files and similar files," but only if their disclosure would "constitute a clearly unwarranted invasion of personal privacy." Id. §552(b)(6).

10. Under Exemption 7(C) of the FOIA, an agency may withhold information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [] could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C).

11. If the agency believes that an exemption applies, the agency is nevertheless required to disclose "[a]ny reasonably segregable portion of the record" that is not exempt from disclosure. Id. § 552(b).

12. Under section 552(a)(6)(C)(I), a requester may appeal an agency's failure to disclose requested records. Id. § 552(a)(6). An agency must make a determination on any such appeal within twenty working days. Id. § 552(a)(6)(A)(ii).

### Factual Background

13. On April 6, 2005, PETA submitted a FOIA request to the USDA, seeking "all records related to the [USDA's] investigation" concerning the "sudden deaths of two elephants at the Culpepper and Merriweather Circus." On December 6, 2005, once the USDA closed its investigation of the circus, the USDA responded to PETA's FOIA request. The USDA released some responsive material to PETA, but withheld ten witness affidavits in full, claiming that the affidavits are exempt from disclosure in their entirety under Exemptions 6 and 7(C) of the FOIA.

14. On January 18, 2006, PETA appealed the partial denial of its FOIA request, challenging the USDA's decision to withhold these witness affidavits in their entirety. PETA asserted that the release of non-personal information in the affidavits could not constitute an unwarranted invasion of any personal privacy interests, as contemplated by Exemptions 6 or 7(C), since PETA was not interested in the release of personal information about the affiants themselves, and, hence, the agency could delete all such information from the requested material. PETA further explained that the FOIA did not protect privacy interests of corporations, nor information about an individual's business or professional activities. PETA also asserted that the public interest in uncovering the cause of the untimely deaths of these two elephants far outweighed whatever minimal privacy concerns could possibly be implicated by the release of non-personal information about the Culpepper and Merriweather Circus' involvement in the elephants' deaths, particularly because of the public concern that the USDA's own Animal and Plant Health Inspection Service Division's failure to properly administer and enforce the AWA may have contributed to the elephants' deaths.

15. On June 28, 2005, PETA submitted a second FOIA request to the USDA, seeking the USDA's "final report" concerning the infamous mauling of performer Roy Horn, of the Las Vegas show "Siegfried and Roy," by one of the show's white tigers during a performance on October 13, 2003. The USDA conducted an investigation into the incident for possible violations of the AWA, since USDA regulations require a sufficient distance between animals and the viewing public in live animal shows, and the tiger was reported to have been within 10 feet of members of the viewing audience when he first attacked Mr. Horn.

16. On July 14, 2005, after the USDA closed its investigation, the USDA responded

to PETA's FOIA request. The USDA disclosed to PETA portions of the investigation report concerning Mr. Horn's attack, but again withheld several supporting affidavits attached to the report under Exemptions 6 and 7(C) of the FOIA. In particular, the USDA withheld, in their entirety, the affidavits of the Deputy Administrator of the USDA's Animal Care Division, the Animal Care Division's veterinarian, and a member of the audience who witnessed the attack on Mr. Horn.

17.     On September 7, 2005, PETA appealed the USDA's partial denial of its FOIA request. PETA asserted that withholding these affidavits in full was not necessary to protect the potential privacy interests – protected by FOIA Exemptions 6 or 7(C) – of either USDA employees or other witnesses to the attack, since any personal privacy information about the affiants could simply be redacted, and the rest of the information contained in the affidavits could be released. In addition, PETA explained that the witness affidavits could not be withheld on the ground that they divulged private information about "Siegfried & Roy," since corporations do not have privacy interests protected by the FOIA. In any case, PETA contended that the public interest in the use and treatment of exotic animals for entertainment purposes far outweighed any potential privacy concerns that might be jeopardized by releasing the non-personal factual information in the withheld affidavits.

18.     On August 15, 2005, PETA submitted a third FOIA request to the USDA, seeking a copy of the report of the investigation conducted by the USDA regarding alleged violations of the AWA by Law Enforcement Military Ammunition Sales ("Le Mas, Ltd."). The USDA conducted an investigation into Le Mas, Ltd., an Arkansas bullet distributor, in response to PETA's complaint that the company was violating the AWA by killing and maiming live pigs

to demonstrate the efficacy of its bullets to the U.S. military and law-enforcement agencies.

19.     On January 12, 2006, over four months later and after the USDA closed its investigation of Le Mas, Ltd., the USDA responded to PETA's request. The USDA released to PETA some responsive records, but withheld two witness affidavits in their entirety. Although the USDA provided almost no information as to the nature of the information being withheld under each respective Exemption, the USDA withheld the affidavits on the apparent basis that disclosure of such material would constitute an unwarranted invasion of privacy under Exemptions 6 and 7(C) of the FOIA, and that portions of the documents were protected by the deliberative process privilege embodied in Exemption 5 of the FOIA.

20.     On February 16, 2006, PETA appealed the USDA's partial denial of its FOIA request, again on the ground that disclosure of factual information contained in the witness affidavits could not possibly constitute an unwarranted invasion of personal privacy interests within the meaning of either Exemptions 6 or 7(C) of the FOIA. PETA also challenged the USDA's withholding of information as protected by FOIA Exemption 5's deliberative process privilege, which does not protect factual information such as that contained in a witness report, and because any protected material was no longer exempt since it had likely been incorporated into the agency's final decision not to bring an enforcement action against Le Mas, Ltd.

21.     On October 26, 2005, PETA submitted a fourth FOIA request to the USDA, seeking a copy of the USDA Office of Inspector General's report of the investigation of AgriProcessors, Inc., for potential violations of the HSA. On February 28, 2006, once the USDA closed its investigation of Agriprocessors, Inc., the USDA responded to PETA's FOIA request. The USDA released some responsive records to PETA, but withheld thirteen witness statements

in their entirety. The USDA claimed that the witness statements were protected from disclosure by Sections 552a(j)(2) and 552a(k)(2) of the Privacy Act.

22. On March 24, 2006, PETA appealed the partial denial of its FOIA request. PETA challenged the USDA's decision to withhold the thirteen witness statements under the Privacy Act because the USDA did not assert any of the FOIA exemptions, which it must under the FOIA, and because it is well-established that the Privacy Act is not an independent basis for withholding material requested under the FOIA.

23. To date, although over twenty working days have passed since PETA submitted its March 24, 2006 appeal, PETA has not received a response to this appeal, nor to the three other appeals described in this Complaint.

24. To the best of plaintiff's knowledge, prior to the USDA's handling of these particular FOIA requests, the USDA never withheld in full witness affidavits and affidavits of USDA employees in response to PETA's – or any other organization's – requests for agency investigatory reports. Rather, in response to all such prior requests, the agency would only redact an individuals' personal identifying information.

25. On information and belief, the USDA has adopted a new policy and practice of withholding, in their entirety, witness affidavits and statements the agency gathers during the course of its investigations of potential violations of the AWA and other statutes, when it processes FOIA requests for information concerning such investigations.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE

(The Freedom of Information Act)

26.     There is no statutory basis for the USDA's decision to withhold the requested information, and PETA has a right of access to this information under the FOIA.

27.     By improperly withholding material that is responsive to plaintiff's FOIA requests under FOIA Exemptions 6 and 7(C), and the Privacy Act, including affidavits and statements of USDA employees and witnesses to potential violations of the AWA and other statutes implemented by the USDA, USDA is in violation of the FOIA.  5 U.S.C. § 552(a)(3)(A).

28.     By improperly withholding material responsive to plaintiff's August 15, 2005 FOIA request under Exemption 5 of the FOIA, USDA is in violation of the FOIA.  Id.

### CLAIM TWO

(The Administrative Procedure Act)

29.     By adopting a policy and practice of withholding, under FOIA Exemption 6, FOIA Exemption 7(C), and the Privacy Act, witness affidavits and statements gathered as part of its investigations of possible violations of the AWA, and other statutes administered by the agency, the USDA is acting in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA.  5 U.S.C. § 706.

30.     The USDA's actions have injured and continue to injure plaintiff in the manner described in paragraphs 3-4.

**WHEREFORE**, plaintiff prays that this Court:

(1) Declare that defendant has violated the FOIA by improperly withholding agency

records that are responsive to plaintiff's FOIA requests;

(2) Declare that defendant has violated the FOIA and the APA by adopting a policy and practice of withholding entire witness affidavits and statements, gathered in the course of defendant's investigations of alleged violations of the AWA and other statutes administered by the agency;

(3) Order defendant to make the requested records immediately available to plaintiff;

(4) Award plaintiff its costs and reasonable attorneys' fees in this action; and

(5) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_Erin M. Tobin_
Erin M. Tobin
(D.C. Bar No. 494948)

_Katherine A. Meyer_
Katherine A. Meyer
(D.C. Bar No. 244301)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Date: May 17, 2006                Attorneys for Plaintiff