UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL TREATMENT   )
 OF ANIMALS,   )
   )
             Plaintiff   )
   )
     v.   )   Civil Action No. 06-0930(RMC)
   )
U.S. DEPARTMENT OF AGRICULTURE,   )
   )
           Defendant.   )
   )

**Defendant's Motion to Dismiss, or Alternatively,
for Summary Judgment**

Defendant, U.S. Department of Agriculture, by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed R. Civ. P. 56"), hereby respectfully moves for summary judgment in this case brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., on the grounds that there are no material facts in dispute and, that indeed, the facts in the case establish that defendant is entitled to judgment as a matter of law.  Defendant further moves to dismiss plaintiff's claim that defendant has engaged in a policy and practice of withholding certain witness statements in response to a FOIA request for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

A statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities in

support of this motion, the declarations of responsible agency officials, indices consistent with the District of Columbia Circuit's opinion in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973)[1], and a proposed Order are filed herewith.

Date: November 3, 2006          Respectfully Submitted,


                                /s/ Jeffrey A. Taylor /bmr
                                _____
                                JEFFREY A. TAYLOR, D.C. BAR #498610
                                United States Attorney


                                /s/ Rudolph Contreras
                                _____
                                RUDOLPH CONTRERAS, D.C. BAR #434122
                                Assistant United States Attorney


                                /s/ Beverly M. Russell
                                _____
Of Counsel:                     BEVERLY M. RUSSELL, D.C. Bar #454257
Karen Carrington, Esq.          Assistant United States Attorney
R. Michael Ching, Esq.          U.S. Attorney's Office for the District
U.S. Dept. of Agriculture        of Columbia
                                555 4th Street, N.W., Rm. E-4915
                                Washington, D.C.  20530
                                Ph:  (202) 307-0492

_____

[1]The <u>Vaughn</u> decision requires agencies to prepare an itemized index correlating each withheld document (or portion) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,<br><br>            Plaintiff<br><br>    v.<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-0930(RMC)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY,
FOR SUMMARY JUDGMENT

The Freedom of Information Act ("FOIA") provides that the district courts have "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of agency records improperly withheld from [a] complainant."  5 U.S.C. § 552(a)(B).  The records that plaintiff seeks -- i.e., documents related to the United States Department of Agriculture's ("USDA" or "Department") investigation into the death of two elephants with the Culpepper and Merriweather Circus, the USDA's "final report" concerning the attack on performer Roy Horn of the Las Vegas show "Siegfried and Roy" by one of show's white tigers, the investigative report related to alleged Animal Welfare Act ("AWA") violations by the company, Law Enforcement Military Ammunition Sales ("Le Mas"), and an investigative report related

to Agriprocessors, Inc.[2] -- have been released with the exception of information properly redacted and withheld under FOIA.  Since the USDA has fully met its obligation under the statute, and there is no material issue in dispute on this point, it respectfully moves for judgment in its favor.  Moreover, the USDA moves to dismiss plaintiff's claim that the USDA has a policy and practice of withholding employee and witness affidavits obtained as part of the Department's investigations of alleged violations of the Animal Welfare Act for failure to state a claim upon which relief may be granted.

---

[2]In the Joint Rule 16.3 Report filed on September 11, 2006, the parties agreed that the following issues remain for purposes of disposition by the Court: (1) plaintiff's pattern and practice claim; (2) redaction of the identities of federal investigators and inspectors from released affidavits and statements; (3) withholding of records responsive to plaintiff's April 6, 2005 request related to the death of two elephants with the Culpepper and Merriweather Circus; (4) withholding of a CD-rom recording related to plaintiff's June 28, 2005 FOIA request for documents concerning the tiger attack on Las Vegas performer Roy Horn; and (5) withholding from an affidavit the identity of the state at issue in plaintiff's August 15, 2005 request for documents related to Le Mas's shooting of pigs to test the efficacy of bullets supplied to the U.S. military and law-enforcement agencies.  R. 15, Joint 16.3 Report, pp. 1-3; see also First Am. Compl. ¶ 19.

I.    **BACKGROUND**

  A.    **Culpepper and Merriweather Circus**

    1.    **Investigative Mission**

The USDA has seven distinct mission areas, the
responsibilities of which are administered by seventeen sub-
agencies, and supported by twelve offices within the Department.
Ex. 1, Declaration of Lesia Banks, ¶ 16, Nov. 2, 2006.   The
seven mission areas are:  Farm and Foreign Agricultural Services;
Food, Nutrition and Consumer Services; Food Safety; Marketing and
Regulatory Programs; Natural Resources and Environment; Research,
Education, and Economics; and Rural Development.  Id.  The Animal
and Plant Health Inspection Service ("APHIS") comes under the
Marketing and Regulatory Programs mission area.   Id. ¶ 17.
Marketing and Regulatory Programs facilitates the domestic and
international marketing of American agricultural products, and
ensures the health and care of plants and animals.  Id.

USDA is empowered to enforce the AWA (7 U.S.C. § 2131 et
seq.) and other federal statutes designed to protect animals from
inhumane treatment and neglect.  Id. ¶ 18.  APHIS administers the
AWA, its regulations and standards.  Id.  Animal Care is a
division within APHIS that provides leadership for determining
standards of humane care and treatment of animals.  Id. ¶ 19.
Animal Care implements those standards through inspections,
educational programs, and cooperative efforts.   Id.

3

Investigative and Enforcement Services ("IES") is the division within APHIS that is responsible for investigating alleged violations of the AWA and other federal statutes that address the humane treatment of animals.  Id. ¶ 20.  Animal Care and IES are separate and distinct divisions within APHIS.  Id. IES conducts investigations into alleged violations of the AWA and other federal animal welfare statutes at the request of Animal Care.  Id.

Many IES investigators do not work out of local or field offices.  Id. ¶ 21.  Rather, they conduct their investigative work out of their homes.  Id. After IES investigators complete an investigation, they forward their investigative reports and related work product to the IES headquarters in Riverdale, Maryland.  Id.  Agency personnel electronically scan and store the IES investigators' reports, notes, and work product in a centralized filing system located at the IES headquarters. Id.

At its national headquarters, IES assigns a Program Support Assistant to serve as a liaison to the APHIS Freedom of Information and Privacy Act Staff ("FOIA office") for the purpose of locating IES records that are responsive to FOIA requests and appeals.  Id. ¶¶ 1 and 22.  Once the FOIA office requests a search for responsive records concerning an IES investigation, the liaison checks an internal IES tracking database to determine the status of the investigation.  Id. ¶ 22.  If the investigation

4

is closed, the liaison will retrieve the investigative records from a central file room at the IES headquarters.  Id.  If the IES investigation is open, the liaison will contact the IES investigator assigned to the investigation in order to obtain copies of the documents that have been generated up to that point in the investigation.  Id.

### 2.   FOIA Request

On April 6, 2005, plaintiff submitted a FOIA request to APHIS requesting an update on a complaint concerning the deaths of two elephants with the Culpepper and Merriweather Circus.  Id. ¶ 6.  APHIS assigned this FOIA request case number 05-361.  Id.

On or about April 20, 2005, the APHIS FOIA office contacted IES and Animal Care and requested that both divisions locate records responsive to FOIA case number 05-361, and forward copies of such records to the FOIA office.  Id. ¶ 23.  On or about June 9, 2005, the FOIA office learned that the IES investigation against the Culpepper and Merriweather Circus had concluded.  Id. ¶ 24.

On July 10, 2005, the FOIA office received responsive records from the Animal Care-Western Regional Office.  Id.  On or about October 24, 2005, the FOIA office received responsive records from IES.  Id. ¶ 25.  Upon receipt of the responsive records from both Animal Care and IES, the FOIA office began processing plaintiff's FOIA request for case number 05-361.  Id.

On December 6, 2005, APHIS granted plaintiff's FOIA request in part and denied it in part. Id. ¶ 7. Specifically, APHIS responded to plaintiff's FOIA request concerning the Culpepper and Merriweather Circus by providing 248 pages in redacted form, and withholding 29 pages in full. Id. On January 18, 2006, plaintiff filed an appeal of APHIS's December 6, 2005 decision. Id. On July 17, 2006, APHIS granted plaintiff's appeal in part and denied it in part. Id. ¶ 13.

On October 2, 2006, the FOIA office conducted a second effort to locate responsive records for plaintiff's FOIA request related to the Culpepper and Merriweather Circus. Id. ¶ 26. To this end, the FOIA office contacted IES and the Animal Care-Western Regional Office, and asked the respective divisions to conduct searches for responsive records. Id.

On October 25, 2006, the Animal-Care Western Region forwarded documents to the FOIA office after conducting its second search. Id. ¶ 27. After comparing these documents with the documents that Animal Care produced in June 2005, the APHIS FOIA office discovered that, with the exception of one page, Animal Care produced duplicate records. Id. A copy of this record, which is an email message between Animal Care staff, was provided to plaintiff on November 2, 2006. Id.

On October 12, 2006, IES initiated a second search for responsive records. Id. ¶ 28. The second search revealed that

the IES records on the Culpepper and Merriweather investigation
that were stored at the IES headquarters were duplicates to the
records that the IES headquarters provided to the APHIS FOIA
office in October 2005.   Id.   In addition, on October 30 and
31, 2006, IES headquarters contacted IES field investigators to
determine whether they had any additional responsive documents
relevant to plaintiff's FOIA request for records on the Culpepper
and Merriweather Circus.   Id. ¶ 29.   The IES field investigators
produced six pages of newly discovered responsive records.   Id.
The FOIA office processed these 6 pages and provided them to
plaintiff on November 2, 2006.   Id.

    The APHIS FOIA Office also re-checked the files that the
FOIA office maintained for plaintiff's request related to the
Merriweather and Culpepper Circus.   Id. ¶ 30.   The FOIA office
discovered that fifty-three pages of responsive records were not
processed for the FOIA request and appeal.   Id.  APHIS processed
these responsive pages, and provided them to plaintiff on
November 2, 2006.   Id.

    With respect to plaintiff's FOIA request for records related
to the investigation on the Culpepper and Merriweather Circus,
APHIS ultimately determined that 303 responsive pages should be
provided to plaintiff in redacted form, and 20 pages should be
provided to plaintiff in full.   Id. ¶ 31.   APHIS determined that
one page should be withheld in full.   Id.  These figures

incorporate the 54 pages of responsive documents uncovered during APHIS second set of searches.  Id.  APHIS redacted information pursuant to and consistent with FOIA Exemptions 4, 6 and 7(C). Id. ¶ 13.

In light of its organizational structure, APHIS pursued the most reasonable leads in efforts to obtain information responsive to the FOIA request and appeal submitted by plaintiff regarding the Culpepper and Merriweather Circus.  Id. ¶ 32.  IES maintains a national, central filing system for its investigative materials for completed investigations.  Id.  Therefore, searching for investigative materials for the Culpepper and Merriweather Circus investigation at the IES headquarters in Riverdale was logical. Id.  APHIS also employed reasonable means to locate responsive records by searching its regional Animal Care office, and contacting its field IES investigators.  Id.

**B.**    **"Roy Horn" Incident at the Mirage Hotel and Casino, Las Vegas, Nevada**

On June 28, 2005, plaintiff submitted a FOIA request seeking a copy of the USDA final report concerning the attack on Roy Horn by a tiger at the Mirage Hotel and Casino in Las Vegas, Nevada. Id. ¶ 8.  APHIS assigned this FOIA request case number 05-634. Id.  APHIS granted this FOIA request in part, and denied it in part on July 14, 2005.  Id.  APHIS provided plaintiff with 80 pages in full, 147 pages in redacted form, and withheld 6 pages in full.

8

On September 7, 2005, plaintiff appealed the July 14, 2005, FOIA determination.  Id. ¶ 9.  Plaintiff limited its appeal to four responsive records, specifically, three affidavits totaling five pages and a compact disc ("CD") audio recording of a telephone message from an informant to APHIS.  Id.  ¶¶ 9 and 14. On July 17, 2006, APHIS granted the appeal in part, and denied the appeal in part.  Id. ¶ 14.  APHIS provided plaintiff with the 5 pages in redacted form, and withheld in full the copy of the CD audio recording.  Id. ¶ 14.  APHIS relied upon Exemptions 6 and 7(C) to redact the 5 pages and to withhold the copy of the CD audio recording.  Id.

###   C.    Le Mas

On August 15, 2005, plaintiff filed a FOIA request with APHIS seeking a copy of the investigative report prepared by USDA concerning alleged violations of the AWA by Le Mas.  Id. ¶ 10. APHIS assigned this FOIA request case number 05-803.  Id.  On January 12, 2006, APHIS responded to this FOIA request by granting it in part, and denying it in part.  Id.  Specifically, APHIS provided plaintiff with 8 pages in full, 9 pages in redacted form, and withheld 5 pages in full.  Id.  On February 16, 2006, plaintiff appealed the January 12, 2006, FOIA determination that APHIS issued regarding case number 05-803. Id.  On July 17, 2006, APHIS granted this appeal in part, and denied the appeal in part.  Id. ¶ 15.  APHIS determined that

there were 14 pages responsive to the appeal.  Id.  APHIS
released one page in full, and provided the other 13 pages to
plaintiff in redacted form.  Id.  APHIS invoked Exemptions 6 and
7(C) to redact the 13 pages of responsive documents.  Id.

### D.  Agriprocessor's Inc.

On July 7, 2005, plaintiff, through counsel, requested a
copy of the OIG's Report of Investigation on AgriProcessors, Inc.
Ex. 3, Declaration of Deirdre MacNeil ("MacNeil Decl. I"), ¶¶ 5,
7 and 13, July 14, 2006.  By letter dated July 21, 2005, Paul
Feeney, Deputy Counsel, OIG, USDA, informed plaintiff that the
FOIA request concerned an ongoing investigation and that all such
records were exempt from disclosure pursuant to the FOIA,
specifically, 5 U.S.C. § 552(b)(7)(A).  Id. ¶ 11.  The July 21,
2005 letter stated in pertinent part: "To release any information
at this time could interfere with enforcement proceeding[s] and
otherwise [might] jeopardize the investigation.  Once the
investigation is closed, you may make another request and we will
process the records as appropriate under FOIA law."  Id. ¶ 12.

On October 26, 2005, plaintiff, through counsel, sent an
electronic mail to Ms. Deirdre MacNeil, the OIG's FOIA officer,
requesting a status as to whether records related to the
AgriProcessor investigation were available and further stating
that its electronic mail should be considered a request for the
investigative report.  Id. ¶ 13.  That same day, Ms. MacNeil

telephoned plaintiff's counsel informing her that the investigation would close shortly and sent plaintiff's counsel a letter acknowledging plaintiff's e-mailed FOIA request.  <u>Id.</u> ¶¶ 13 and 14.  In the October 26, 2005 letter, Ms. MacNeil informed plaintiff that the OIG had a backlog of requests and that the FOIA staff processes requests on a first-in, first-out basis using "multitracks." <u>Id.</u> ¶ 15. The letter went on to state that there were three tracks for processing FOIA requests: "an expedited track if the request involves a matter of imminent threat to life; a simple track for relatively simple requests; and a complex trac[k] for more complex and lengthy requests." <u>Id.</u>  Plaintiff's counsel was informed that plaintiff's request would be categorized and processed "in turn."  <u>Id.</u>

On February 16, 2006, Ms. MacNeil informed plaintiff's counsel that the investigation into AgriProcessors was closed, and that the OIG would start the FOIA review and release process. <u>Id.</u> ¶ 25.  On February 28, 2006, the USDA's OIG released sixty-nine pages of documents with redactions pursuant to the FOIA, 5 U.S.C. §§ 552(b)(6) and (7)(C), and withheld thirteen witness statements pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2) and (k)(2).  <u>Id.</u> ¶ 27. On March 24, 2006, plaintiff appealed the withholding of the thirteen witness statements.  <u>Id.</u> ¶ 28.  The witness statements were subsequently released with redactions pursuant to 5 U.S.C. 552(b)(6) and (7)(C).  <u>Id.</u> ¶ 33.

## II.    **ARGUMENT**

### A.    Summary Judgment Should Be Granted to Defendant on Plaintiff's Claims.

#### 1.    Standard of Review

Summary judgment is the procedure by which courts resolve nearly all FOIA actions.  See, e.g. Misciavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in use are properly identified."); Evans v. U.S. Office of Personnel Management, 276 F.Supp.2d 34, 37 (D.D.C. 2003). Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; see also Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The FOIA generally provides that any person has a right, enforceable in court, of access to federal agency records, except to the extent that such records (or portions thereof) are

12

protected from mandatory disclosure by one of nine exemptions.
See 5 U.S.C. § 552(b).  The Court's review of the matter is de
novo.  5 U.S.C. § 552 (a)(4)(B).

In a FOIA dispute, the Government bears the burden of
justifying nondisclosure of information, McCutchen v. HHS, 30
F.3d 183, 185 (D.C. Cir. 1994), which it sustains through
detailed agency declarations that identify the information at
issue and the bases for the exemption(s) claimed, see Summers v.
Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  Summary
judgment for the federal government is appropriate in a FOIA case
if the declarations submitted in support of the motion
(1) describe the documents and justification for their
nondisclosure in reasonably specific detail; (2) demonstrate that
the information withheld logically falls within the claimed
exemption; and (3) are not controverted by either (a) contrary
evidence in the record or (b) evidence of agency bad faith.  See
Shaw v. United States Dep't of State, 559 F. Supp. 1053, 1056
(D.D.C. 1983) (quoting Military Audit Project v. Casey, 656 F.2d
724, 738 (D.C. Cir. 1981)); see also Miller v. Casey, 730 F.2d
773, 776 (D.C. Cir. 1984).

Given the unique nature of FOIA cases, the court accords the
agency's declarations substantial weight.  See, e.g. Gardels v.
CIA, 689 F.2d 1100, 1104 (D.C. Cir. 1982).  Indeed, agency
affidavits are to be accorded a presumption of good faith.  In re

13

<u>Wade</u>, 969 F.2d 241, 246 (7th Cir. 1992)("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned.") Thus, an agency should prevail on summary judgment based solely on its declarations if the declarations are clear, specific, reasonably detailed, and describe the withheld information in a factual and nonconclusory manner.  <u>Miller</u>, 730 F.2d at 776.

### 2.    The Adequacy of USDA's Searches

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983); <u>Judicial Watch, Inc. v. U.S. Dept. of Commerce</u>, 337 F.Supp.2d 146, 158 (D.D.C. 2004); <u>Allen v. U.S. Secret Service</u>, 335 F.Supp.2d 95, 97 (D.D.C. 2004); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health</u>, 844 F. Supp. 770, 776 (D.D.C. 1993).  The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'"  <u>Kronberg v. Department of Justice</u>, 875 F. Supp. 861, 869 (D.D.C. 1995) (<u>quoting</u> <u>Truitt v. Department of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)); <u>see also</u> <u>Judicial Watch, Inc.</u>, 337 F.Supp.2d at 158.  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." <u>Meeropol v. Meese</u>, 790 F.2d 942, 956 (D.C. Cir. 1986).

14

Indeed, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Additionally, the search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Id.; see also Allen, 335 F.Supp.2d at 99-100 (mere fact that plaintiff discovered one document from a third source that possibly should have been uncovered by the defendant agency "does not render the search process unreasonable.") Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the

15

affidavits are relatively detailed, non-conclusory and submitted in good faith." <u>Miller</u>, 779 F.2d at 1383; <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1987), <u>cert. denied</u>, 445 U.S. 927 (1980).  Once the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  <u>Miller</u>, 779 F.2d at 1383.  It is insufficient, however, for a requester to attempt to rebut the agency affidavit with purely speculative claims.  See <u>Carney v. U.S. Department of Justice</u>, 19 F.3d 807, 813 (1st Cir. 1994); <u>SafeCard Services, Inc. v. S.E.C.</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Banks declaration (Ex. 1, ¶¶ 16-32) and the MacNeil declaration (Ex. 3, ¶¶ 6-8) demonstrate that, in this case, the USDA engaged in "good faith effort[s] to conduct. . .search[es] for the requested records, using methods which [were] reasonably expected to produce the information requested." <u>Oglesby,</u> 920 F. 2d at 68.  Because the USDA searched for records in locations where responsive documents were likely to be found, its searches were adequate and consistent with the case law of this jurisdiction.

Specifically, the record evidences that the USDA found and produced the specific investigative documents requested by plaintiff -- i.e., those related to Roy Horn, Le Mas, and

16

Agriprocessors.  Ex. 1, Banks Decl. ¶¶ 8-10 and 14-15; Ex. 3, MacNeil Decl. ¶¶ 25-29 and 33.  The USDA withheld certain information from these documents pursuant to and consistent with the provisions of the FOIA and the Privacy Act, 5 U.S.C. § 552a(j)(2) and (k)(2).  Ex. 1, Banks Decl. ¶¶ 33-46; Ex. 3, MacNeil Decl. ¶¶ 27 and 33.

To the extent that plaintiff specifically challenges the adequacy of the search as related to its request for records on the Culpepper and Merriweather Circus investigation[3], the records evidences that the USDA's search comported with legal requirements under the FOIA.  The Banks declaration describes the offices searched, the appropriateness of targeting the search to those offices, the efforts of the FOIA office in effectuating multiple searches, and the method used to conduct the search.  Ex. 1, Banks Decl. ¶¶ 16-32.  The detailed description evidences that the USDA's search for responsive records was fully consistent with the obligations imposed by the FOIA.  See Looney v. Walters-Tucker, 98 F.Supp.2d 1, 3 (D.D.C. 2000).

Accordingly, for reasons stated supra, to the extent plaintiff is challenging the USDA's searches on its FOIA requests, its claim should be dismissed.

_____

[3] See R. 15, Joint Rule 16.3 Report, p. 2-3 ("...although the withholding of the affidavits and statements in their entirety is no longer an issue in the case, there remain several issues that need to be resolved:. . .(3) withholding of records that are responsive to plaintiff's April 6, 2005 request. . .")

### 3.   USDA's Proper Application of FOIA Exemptions.

#### a.   Exemption 4

Exemption 4 covers two broad categories of information in federal agency records: (1) trade secrets; and (2) information that is (a) commercial or financial, _and_ (b) obtained from a person, _and_ (c) privileged or confidential.  5 U.S.C. § 552(b)(4); <u>Public Citizen Health Research Group v. FDA</u>, 704 F.2d 1280, 1288, 1290 (D.C. Cir. 1983).  Regarding the latter, if information relates to business or trade, courts generally will accord it the status of "commercial" information for purposes of the FOIA.  It is not necessary to show that the records reveal basic commercial operations; records are deemed commercial so long as the submitter has a "commercial interest" in them.  <u>Id.</u> at 1290.  Further, "the term 'person' in the context of Exemption 4 applies to a wide range of entities including corporations, associations and public or private organizations."  <u>Judicial Watch, Inc. v. Export-Import Bank</u>, 108 F.Supp.2d 19, 28 (D.D.C. 2000)(citations omitted).

In this Circuit, the determination of whether information is "confidential" under Exemption 4 turns first on the question of whether the information was provided to the government on a "voluntary basis" or "under compulsion."  <u>Critical Mass Energy Project v. NRC</u>, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).  Under <u>Critical Mass</u>, if information is provided to the government voluntarily, it is exempt from release under Exemption 4 if the

18

submitter can show that it would not customarily release the information to the public.  Id.  On the other hand, if the government requires the information to be submitted, it must be released under the FOIA unless its disclosure is likely to (1) impair the government's ability to obtain necessary information in the future; (2) cause substantial harm to the competitive position of the person from whom the information was obtained; or (3) impair agency efficiency or effectiveness.  See National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770 & n 17 (D.C. Cir. 1974).

Here, APHIS applied Exemption 4 to information contained in the Culpepper and Merriweather Circus investigative file.  Ex. 1, MacNeil Decl. ¶ 34; Ex. 2, Vaughn Index (APHIS), p. 12.  The redacted information reflects the banking account information of two businesses, both of which were parties to an agreement to lease elephants.  Id. Such information is considered "confidential" throughout the banking industry, Judicial Watch, Inc., 108 F.Supp.2d at 31.  Thus, disclosure is clearly not customary, and could foreseeably lead to competitive harm and difficulty on the part of the government to obtain necessary investigative information in the future.  Additionally, disclosure simply would not advance the purpose of FOIA which is to shed light on the manner in which the government conducts its business.  See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989).  Accordingly, the bank account information was appropriately

redacted from the Culpepper and Merriweather investigative file.

###    b.    Exemption 5

Certain responsive documents are protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5).  Ex. 1, Banks Decl. ¶¶ 44-45; Ex. 2, Vaughn Index (APHIS), p. 18.  The privilege shields from disclosure "the deliberative process that precedes most decisions of government agencies."  Russell v. Department of the Air Force, 682 F.2d 1045, 1047 (D.C. Cir. 1982); accord Edmonds Institute v. U.S. Dept. of Interior, --- F.Supp.2d ----, 2006 WL 3069889, *5 (D.D.C. Oct. 30, 2006); National Sec. Archive Fund, Inc. v. C.I.A., 402 F.Supp.2d 211, 217 (D.D.C. 2005).  For the privilege to apply, however, the communication must be both predecisional, i.e., "antecedent to the adoption of an agency policy," Jordon v. Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)(en banc), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco, and Firearms, 620 F.2d 1051 (D.C. Cir. 1981)(en banc), and deliberative "in that it makes recommendations or expresses opinions on legal and policy matters," Vaughn v. Rosen, 523 F.2d 1136, 1143-144 (D.C. Cir. 1975).

"[T]he exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." Russell, 682 F.2d at 1048.

> There are essentially three policy bases for this
> privilege.  First, it protects creative debate and

20

> candid considerations of alternatives within an agency,
> and, thereby, improves the quality of agency policy
> decisions. Second, it protects the public from the
> confusion that would result from premature exposure to
> discussions occurring before the policies affecting it
> had actually been settled upon. And third, it protects
> the integrity of the decision-making process itself by
> confirming that "officials should be judged by what
> they decided[,] not for matters they considered before
> making up their minds."

Jordan, 591 F.2d at 772-73 (citation omitted).

Thus, the exemption "guard[s] against disclosure of documents that suggest 'as agency position that which is as yet only personal position.'" Russell, 682 F.2d at 1048 (quoting Coastal States Gas Corp., 617 F.2d 854, 866 (D.C. Cir. 1980)). In addition, when evaluating a claim of deliberative process privilege, courts must defer to the agency's explanation of its decisional process, given the agency's expertise in determining "what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" Pfeiffer v. CIA, 721 F. Supp. 337, 340 (D.D.C. 1989), quoting Chemical Mfgrs. Ass'n v. CPSC, 600 F. Supp. 114, 118 (D.D.C. 1984). The critical factor "is whether disclosure of the information would 'discourage candid discussion within the agency.'" Access Reports v. Department of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991), quoting Dudman Communications Corp. v. Department of Air Force, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987).

As described in the Banks Declaration and the APHIS Vaughn Index, certain withheld information is protected by the deliberative process privilege, i.e., the information is both

predecisional and deliberative.  Specifically, Exemption 5 was used to protect certain information from internal email messages among APHIS employees.  Ex. 1, Banks Decl. ¶ 45.  The redacted information contains predecisional recommendations from subordinate APHIS employees regarding the course of action that APHIS should take concerning an entity that allegedly violated the AWA.  Id.; Ex. 2, Vaughn Index, p. 24.  Release of such information would discourage frank and open discussions and could likely cause harm to the outcome of a deliberation before a final decision is ultimately decided.  Id.  Accordingly, consistent with FOIA Exemption 5, the information was appropriately redacted.

### c.    Exemption 6

The Privacy Act states, in pertinent part, that "no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless falling within the 12 enumerated exceptions of the statute.  5 U.S.C. § 552a(b).  Although one of these exceptions encompasses disclosure of records *when required* by the FOIA (see 5.U.S.C. § 552a(b)(2)), the FOIA - consistent with the Privacy Act - contains provisions recognizing the privacy rights of individuals in information contained in government records

about them and accords protections from disclosure of such information.

Specifically, FOIA Exemption 6 protects from disclosure information about individuals contained in government "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal property." 5 U.S.C. § 552(b)(6). The threshold issue to be determined in the application of Exemption 6 was firmly established in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595 (1982). The Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for protection under Exemption 6. Id. at 602.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" Reed v. National Labor Relations Board, et al., 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989) cert. denied, 494 U.S. 1078 (1990). "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" Dept. of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

23

Pursuant to Exemption 6, APHIS has withheld the names and other personally identifiable information of individuals who were associated with investigations conducted by the agency in FOIA case numbers 05-361 (Culpepper and Merriweather Circus), 05-634 (Ray Horn Incident), and 05-803 (Le Mas). Ex. 1, Banks Decl. ¶¶ 36-37; Ex. 2, Vaughn Index (APHIS). The USDA's OIG withheld similar types of identifying information. Ex. 3, MacNeil I Decl., ¶ 27, Ex. 4, Vaughn Index (OIG). Disclosure of this information would not serve FOIA's purpose of revealing what the Government is up to, Reporters Comm. for Freedom of the Press, 489 U.S. at 773, but could lead to an unwarranted invasion of personal privacy not contemplated even by FOIA's pro-disclosure policy. Ex. 1, Banks Decl. ¶¶ 36-37; Ex. 2, Vaughn Index (APHIS); Ex. 4, Vaughn Index (OIG). After all, the purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's conduct." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. Accordingly, the personal information was appropriately withheld under FOIA. See, e.g. Carter v. U.S. Dept. of Commerce, 830 F.2d 388, 391-92 (D.C. Cir. 1987)(Agency not required to disclose portions of files that would tend to lead to the identification of subjects of investigation; disclosure could constitute a clearly unwarranted invasion of personal privacy); Carbe v. Bureau of Alcohol, Tobacco and Firearms, No.Civ.A. 03-1658(RMC), 2004 WL 2051359 (D.D.C. Aug. 12, 2004).

d.    **Exemption 7(C)**

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes" under certain circumstances.  5 U.S.C. § 552(b)(7).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).

The FOIA does not apply to records or information compiled for law enforcement purposes to the extent release of the information could reasonably be expected to constitute an unwarranted invasion of privacy.  5 U.S.C. § 552(b)(7)(C); see also Chavez-Arellano v. U.S. Dept. of Justice, No. 05-2503(RMC), 2006 WL 2346450, *7 (D.D.C. Aug. 11, 2006).  Pertinent here, Exemption 7(C)'s privacy interest provision covers materials compiled for investigations, the results of which may result in criminal or civil sanctions.  Jefferson v. Department of Justice, Office of Professional Responsibility, 284 F.3d 172, 177 (D.C. Cir. 2002) and Kimberlin v. Department of Justice, 139 F.3d 944, 947 (D.C. Cir. 1998).

In the case, Department of Justice v. Reporters Committee for Freedom of the Press, the Supreme Court stated that the meaning or essence of a privacy interest is the individual's

ability to control information about himself and that the FOIA's authors had not intended the statute to be used to disclose records regarding individual persons. 489 U.S. at 763 and 765. The Supreme Court established a balancing test for purposes of determining when a person's privacy interests should be compromised in favor of public disclosure. The test turns on the nature of the document or record at issue, and its relationship to the "core purpose" of the FOIA, which is to shed light on an agency's performance of its duties. Id. at 773. Relevant here, the Supreme Court stated this purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's conduct." Reporter's Committee, 489 U.S. at 773. Notably, the District of Columbia Circuit has also stated that at least since the 1986 FOIA amendments, the balance contemplated by Exemption 7(C), "is not . . . 'tilted emphatically in favor of disclosure.'" Keys, 830 F.2d at 346, quoting Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987).

Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); Johnson v. Commissioner of Internal Revenue, 239 F.Supp.2d 1125,

26

1137 (W.D. Wash. 2002)(Court concluded that the IRS appropriately withheld information identifying third parties and witnesses contacted during an IRS investigation pursuant to Exemption 7(C).)

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Prof'ls for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996); Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

In this case, the exemption was applied to names and other identifying information of government personnel and third parties who were involved in the investigations which were the subject of plaintiff's underlying FOIA case. Ex. 1, Banks Decl. ¶¶ 41-43; Ex. 2, Vaughn Decl. (APHIS); Ex. 3, MacNeil Decl. I., ¶ 27; Ex. 4, Vaughn Index (OIG). Releasing the names and other

27

identifiable information would constitute an unwarranted invasion

of privacy.  Id.  Further, in each instance, it was determined

that whatever public interest there might be, if any, in knowing

these names, such interest did not outweigh the privacy interests

of the individuals.  Id.  Accordingly, the personally

identifiable information from the law enforcement records was

appropriately redacted pursuant to FOIA Exemption 7(C).[4]

> ### 4.    USDA's Disclosure of All Reasonably Segregable Information.

The District of Columbia Circuit has held that a District

Court considering a FOIA action has "an affirmative duty to

consider the segregability issue sua sponte."  Trans-Pacific

Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028

(D.C. Cir. 1999).  The FOIA requires that if a record contains

information that is exempt from disclosure, any "reasonably

---

[4]The assertion of Exemption 7(C), of course, applies with
equal force to the CD audio recording in which plaintiff has a
continuing interest.  R. 15, Joint Rule 16.3 Report, p. 3.  The
caller/informant has a privacy interest in not being associated
with the investigation at issue here, specifically that related
to the attack on Roy Horn.  Ex. 2, Vaughn Index (APHIS), p. 23.
The caller/informant's privacy interests are also implicated
because he or she could be identified by voice.  Id.  Disclosing
this CD recording may subject the caller/informant to substantial
inquiries or harassment by the media and interested parties.  Id.
Furthermore, the information on the CD recording reveals nothing
about APHIS activities.  Id.  APHIS withheld the recording in
full because the contents of this recording would not educate the
public about the inner workings of APHIS.  Id.  The privacy
interests of the caller/informant outweighed the public interests
in disclosing the CD recording under FOIA.  Id.

segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  In this case, the USDA has demonstrated with reasonable specificity that all reasonably segregable information has been released.  Ex. 1, Banks Decl. ¶ 46; Ex. 3, MacNeil Decl. ¶ 33.  All information withheld was exempt from disclosure pursuant to a FOIA exemption.  Id.  No reasonably segregable non-exempt information was withheld from Plaintiff.  Id.  Accordingly, the USDA's actions fully comport with FOIA requirements regarding segregability. See, e.g. Gutman v. U.S. Dep't of Justice, 238 F.Supp.2d 284, 296 (D.D.C. 2003).

**B.    Plaintiff Fails to State a Claim Under the APA.**

**1.    FOIA's Remedial Scheme**

"The APA authorizes judicial review of agency action only when the agency action is 'final' and when 'there is no other adequate remedy.'"  Mittleman v. King, No.CIV.A.93-1869 SSH, 1997 WL 911801, at *4 (D.D.C. Nov. 4, 1997)(citing 5 U.S.C. § 704); see also Blazy v. Woolsey, No.Civ.A.93-2424 (PLF), 1996 WL 43554, at *1 (D.D.C. Jan. 31, 1996). Here, plaintiff seeks relief under the APA based on a claim that the USDA has a policy and practice of withholding, in full, affidavits of witnesses and USDA employees that the agency obtains as part of its AWA investigations.  First Am. Compl. ¶¶ 1 and 30.

As indicated above, by its terms, APA review is available only "to the extent that prior, adequate, and exclusive opportunity for judicial review is [not] provided by law." 5 U.S.C. § 703 (emphasis added); see also 5 U.S.C. § 704 (limiting reviewable actions to those "for which there is no other adequate remedy in a court").  As the Supreme Court has stated, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action . . . § 704 does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) (internal quotation marks omitted); see also Women's Equity Action League v. Kuvasz, 906 F.2d 742, 750-51 (D.C. Cir. 1990) (holding that APA review is precluded where another statutory remedy exists for the specific form of discrimination alleged); Sierra Club v. United States Department of Interior, 384 F.Supp.2d 1, 30 (D.D.C. 2004)(holding that APA claim is precluded based on alleged FOIA violation related to agency withholding of documents); Tripp v. Department of Defense, 193 F. Supp. 2d 229, 238-39 (D.D.C. 2002) (Plaintiff cannot bring APA claim based on alleged Privacy Act violation); Mittleman, 773 F. Supp. at 449 (same); First National Bank of Scotia v. United States, 530 F. Supp. 162, 167 (D.D.C. 1982) ("It is . . . well-settled that where Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those

30

situations to which it applies.") (internal quotation marks and citation omitted); <u>Fisher v. Federal Bureau of Investigation</u>, 94 F.Supp.2d 213, 216 (D.Conn. 2000)(Plaintiff could not bring APA claim to compel agency to produce records pertaining to him, but instead had to "establish subject matter jurisdiction under" the FOIA or the Privacy Act.  Court stated,"APA cannot support jurisdiction where another statute provides for judicial review in a given situation.")(citation omitted).

The FOIA provides for judicial review of agency decisions to withhold documents.  5 U.S.C. §§ 552(a)(4)(A)(vii), (a)(4)(B); <u>see also</u> <u>Sierra Club</u>, 384 F.Supp.2d at 30. The FOIA, therefore, provides plaintiff with an adequate opportunity for judicial review of any actions the USDA might take with respect to FOIA requests submitted by plaintiff.  Accordingly, plaintiff's APA claim should be dismissed.

## 2.    Plaintiff's Failure to State a Claim Even Under the Appropriate Remedial Scheme, i.e., FOIA

Only in limited circumstances not applicable here does the FOIA provide for judicial review of claims that an agency has adopted a policy or practice of improperly responding to FOIA requests -- i.e., (i) where the agency has a written, generally applicable policy has been challenged, <u>see, e.g.</u>, <u>Public Citizen</u>, 276 F.3d at 641-42 (challenge to "published [FOIA] guidance" ripe for review); <u>Better Government Ass'n v. Department of State</u>, 780 F.2d 86 (D.C. Cir. 1986) (challenge to published FOIA guidelines and regulation ripe for review) or (ii) when such claims are predicated on repeat, *specific* conduct, <u>see, e.g.</u>, <u>Payne Enters.</u>, <u>Inc. v. United States</u>, 837 F.2d 486 (D.C. Cir. 1988); <u>Long v.</u>

31

IRS, 693 F.2d 907 (9th Cir. 1982).  Compare Regional Mgmt. Corp., Inc. v. Legal Services Corp., 186 F.3d 457, 464-66 (4th Cir. 1999) (challenge to alleged FOIA policy not ripe, where contours of alleged policy unclear).

     In Payne, for example, the plaintiff was a repeat requester of one type of document – bid abstracts.  Payne, 837 F.2d at 488. Air Force FOIA officers repeatedly refused to release these abstracts upon request, although no FOIA exemption applied.  Id. at 487-88.  Upon administrative appeal to the Secretary of the Air Force, the Secretary "without exception ordered disclosure" of the abstracts.  Id. at 487.  "Nevertheless, [the FOIA] officers continued to refuse [plaintiff's] FOIA requests for bid abstracts, thereby necessitating further – and invariably successful – administrative appeals."  Id.  In the face of such *repeated* conduct respecting *specific documents* and a *repeat requester* of such documents, the court held that the challenged "policy" was sufficiently "crystallized": "In Payne's case . . . the outlines and impact of the disputed practice are manifest. It is a practice of unjustified delay by means of initial denial followed by the eventual release of the requested document . . . ."  Id. at 493.

     By contrast, the "policy and practice" being challenged here is as "uncrystallized" as one could imagine – indeed, notwithstanding amending its Complaint, *plaintiff has not identified any policy or practice* other than a generic, conclusory grievance.  Plaintiff has *not* identified any particular agency decision, regulation, guideline or policy that it is challenging, and has *not* explained the scope or nature of

the alleged policy and practice. Unlike those cases in which a published guideline or regulation was at issue, or where the agency had in fact adopted a practice with respect to the handling of particular types of requests from repeat requesters, plaintiff here alleges no such thing. Here, the Court would not only have to guess at the ramifications of the alleged policy but at its substance as well. Because "it is not clear whether [Defendant] actually has a fully developed policy" as alleged, <u>Regional Mgmt.</u>, 186 F.3d at 465, plaintiff's claim is not even ripe for review

"This case would be quite different if, for example, [the Department] announced a firm policy, applicable in all cases" of not producing witness statements. <u>Id.</u> Defendant, of course, has done no such thing. <u>See</u> Ex. 1, Banks Decl. ¶ 47; Ex. 5, Supplemental Declaration of Deirdre MacNeil, ¶¶ 4-5, Oct. 26, 2006. Indeed, consistent with law, the USDA evaluates FOIA requests individually according to the requirements of the FOIA. <u>Id.</u> Defendant's conduct is entitled "[t]he presumption of regularity [that] supports the official acts of public officers." <u>United States v. Chemical Found.</u>, 272 U.S. 1, 14 (1926). "[I]n the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." <u>Id.</u> at 14-15. Here, the USDA has properly discharged its duties under the FOIA, and thus, plaintiff's "pattern and practice" claim fails to state a claim upon which relief may be granted.

IV. <u>**CONCLUSION**</u>

For the reasons stated herein, defendant requests that its summary judgment motion be granted.

Date: November 3, 2006                Respectfully Submitted,


                                      /s/ Jeffrey A. Taylor /dch
                                      _____
                                      JEFFREY A. TAYLOR, D.C. BAR #498610
                                      United States Attorney


                                      /s/ Rudolph Contreras
                                      _____
                                      RUDOLPH CONTRERAS, D.C. BAR #434122
                                      Assistant United States Attorney


                                      /s/ Beverly M. Russell
                                      _____
Of Counsel:                           BEVERLY M. RUSSELL, D.C. Bar #454257
Karen Carrington, Esq.                Assistant United States Attorney
R. Michael Ching, Esq.                U.S. Attorney's Office for the District
U.S. Dept. of Agriculture              of Columbia
                                      555 4th Street, N.W., Rm. E-4915
                                      Washington, D.C.  20530
                                      Ph:  (202) 307-0492

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Motion for Summary

Judgment was sent by the Court's Electronic Case Filing System, this

3rd day of November, 2006 to:

Erin M. Tobin, Esq.
Katherine A. Meyer, Esq.
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W., Suite 700
Washington, D.C.  20009
erintobin@meyerglitz.com
katherinemeyer@meyerglitz.com


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney