IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,<br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br>Defendant. | Case No. 1:06-CV-00930 (RMC) |

### DECLARATION OF LESIA BANKS

In accordance with 28 U.S.C. § 1746, I, Lesia M. Banks, do hereby declare that:

1. I am employed with the United States Department of Agriculture ("USDA") as the Director of the Freedom of Information and Privacy Act Staff, Legislative and Public Affairs ("LPA"), in the Animal and Plant Health Inspection Service ("APHIS").

2. Before assuming my present position, I served in various Freedom of Information Act ("FOIA") and Privacy Act related positions, which include: Privacy Act Officer for USDA, Chief of Access Litigation and Freedom of Information Branch for the Food and Drug Administration, and Branch Chief, Freedom of Information Staff for the Securities and Exchange Commission. I also served as a FOIA Specialist in the Office of Information and Privacy at the United States Department of Justice.

3. In my current position, I supervise the staff that administers the FOIA and Privacy Act for the following APHIS components: Legislative and Public Affairs, Animal Care, Biotechnology Regulatory Services, Civil Rights Enforcement & Compliance, International Services, Office of the Administrator, Plant Protection and Quarantine, Veterinary Services, Wildlife Services, and Marketing and Regulatory Programs Business Services. My office assists

with the review and the preparation of responses to FOIA and Privacy Act requests and appeals submitted to APHIS.

4. I have occupied my position since January 3, 2005. Accordingly, I am familiar with the organizational structure, operations, and responsibilities of the aforementioned APHIS divisions. In addition, I am familiar with the process for locating records responsive to FOIA requests. I consulted the individuals who were directly involved in the search for records responsive to the FOIA requests submitted by People for the Ethical Treatment of Animals ("PETA" or "Plaintiff"). The statements made herein are made based on: a) my review of the official files and records of the APHIS, LPA, Freedom of Information and Privacy Act Staff; b) my personal knowledge; and, c) information acquired by me in the course of the performance of my official duties.

<u>The Processing of FOIA Requests and Appeals Submitted by PETA</u>

5. This matter concerns FOIA requests and related appeals filed by PETA concerning the following investigations conducted by Investigation and Enforcement Services ("IES"), a division of APHIS against or into: a) Culpepper and Merriweather Circus; b) the "Roy Horn" Incident at the Mirage Hotel and Casino in Las Vegas, NV; and c) Law Enforcement Military Ammunition Sales ("Le Mas"), an ammunitions distribution company. The following paragraphs will provide basic information concerning these FOIA requests and appeals.

6. <u>Culpepper and Merriweather Circus</u>: On April 6, 2005, PETA submitted a FOIA request to APHIS requesting an update on a complaint concerning the deaths of two elephants at the Culpepper and Merriweather Circus. Attachment 1. APHIS assigned this FOIA request the case number 05-361.

7. On December 6, 2005, APHIS granted PETA's FOIA request in part and denied it in part. Attachment 2. Specifically, APHIS responded to PETA's FOIA request concerning the Culpepper and Merriweather Circus (case number 05-361) by providing 248 pages in redacted form, and withholding 29 pages in full. PETA filed an appeal of the December 6, 2005, FOIA determination issued by APHIS on January 18, 2006. Attachment 3.

8. "Roy Horn" Incident at the Mirage Hotel and Casino in Las Vegas, NV: On June 28, 2005, PETA submitted a FOIA request seeking a copy of the USDA final report concerning the mauling of Roy Horn by a tiger at the Mirage Hotel and Casino in Las Vegas, NV. Attachment 4. APHIS assigned this FOIA request the case number 05-634. APHIS granted this FOIA request in part, and denied it in part on July 14, 2005. Attachment 5. APHIS provided PETA with 80 pages in full, 147 pages in redacted form, and withheld 6 pages in full.

9. On September 7, 2005, PETA appealed the July 14, 2005, FOIA determination issued by APHIS regarding case number 05-634. Attachment 6. PETA limited its appeal to four responsive records, which are three affidavits and a compact disc audio recording of a telephone message from an informant to APHIS.

10. Le Mas: On August 15, 2005, PETA filed a FOIA request with APHIS seeking a copy of the investigative report prepared by USDA concerning alleged violations of the Animal Welfare Act ("AWA") by Le Mas. Attachment 7. APHIS assigned this FOIA request the case number 05-803. On January 12, 2006, APHIS responded to this FOIA request by granting it in part, and denying it in part. Attachment 8. Specifically, APHIS provided PETA with 8 pages in full, 9 pages in redacted form, and withheld 5 pages in full. PETA appealed the January 12, 2006, FOIA determination that APHIS issued regarding case number 05-803 on February 16, 2006. Attachment 9.

APHIS Determinations Regarding the PETA FOIA Appeals

11. On June 15, 2006, Plaintiff initiated this matter before the court. As a matter of practice, APHIS processes FOIA appeals in the order that are submitted to my office. Due to a significant backlog of FOIA requests and appeals in my office, the appeals for case numbers 05-361, 05-634, 05-803, were not processed at the time that this lawsuit was initiated. Upon learning about this lawsuit, my office processed the aforementioned FOIA appeals in accordance with USDA regulations. See 7 C.F.R. § 1.14. In accordance with USDA regulations, APHIS submitted the appeals for case numbers 05-361, 05-634, 05-803 to the Assistant General Counsel of the USDA, Office of the General Counsel, General Law Division ("OGC"), for legal review and concurrence.

12. After consulting OGC in accordance with USDA regulations, APHIS issued the following determinations regarding the FOIA appeals submitted by PETA:

13. <u>Culpepper and Merriweather Circus (case number 05-361)</u>: On July 17, 2006, APHIS granted the appeal in part and denied the appeal in part. There are 264 responsive pages to the FOIA appeal submitted by PETA. Of the 264 responsive pages, APHIS provided 263 pages to PETA in redacted form, and withheld one page (which was a witness list). APHIS redacted the 263 pages in accordance with Exemptions 4, 6, and 7(C) of the FOIA. Attachment 10.

14. <u>"Roy Horn" Incident at the Mirage Hotel and Casino in Las Vegas, NV (case number 05-634)</u>: On July 17, 2006, APHIS granted the appeal in part, and denied the appeal in part. The scope of the appeal encompasses three affidavits, which totaled 5 pages, and a copy of a CD audio recording. APHIS provided PETA with the 5 pages in redacted form, and withheld

in full the copy of the CD audio recording. Attachment 11. APHIS relied upon Exemptions 6 and 7(C) to redact the 5 pages and to withhold the copy of the CD audio recording.

15. <u>Le Mas (case number 05-803)</u>: On July 17, 2006, APHIS granted this appeal in part, and denied the appeal in part. APHIS determined that there were 14 pages responsive to the appeal. APHIS decided to release one page in full, and to provide the other 13 pages to PETA in redacted form. APHIS invoked Exemptions 6 and 7(C) to redact the 13 pages of responsive documents. Attachment 12. On November 2, 2006, APHIS decided to release one-redacted page with additional information, and to disclose one page, which was previously redacted, in its entirety. Currently, there 12 redacted pages at issue regarding FOIA case number 05-803.

### Efforts to Locate Responsive Records for Case Number 05-361, Culpepper and Merriweather Circus FOIA Request and Appeal

16. USDA has 7 distinct mission areas, the responsibilities of which are administered by 17 sub-agencies, and supported by 12 offices within the department. By way reference and background, the 7 mission areas are: Farm and Foreign Agricultural Services; Food, Nutrition and Consumer Services; Food Safety; Marketing and Regulatory Programs; Natural Resources and Environment; Research, Education, and Economics; and, Rural Development.

17. APHIS comes under the Marketing and Regulatory Programs mission area. Marketing and Regulatory Programs facilitates the domestic and international marketing of American agricultural products, and ensures the health and care of plants and animals.

18. USDA is empowered to enforce the AWA and other federal statutes designed to protect animals from inhumane treatment and neglect. APHIS administers the AWA, its regulations and standards.

19. By way of background, Animal Care is a division within APHIS that provides leadership for determining standards of humane care and treatment of animals. Animal Care implements those standards through inspections, educational programs, and cooperative efforts.

20. IES is the division within APHIS that is responsible for investigating alleged violations of the AWA and other federal statutes that address the humane treatment of animals. Animal Care and IES are separate and distinct divisions within APHIS. IES conducts investigations into alleged violations of the AWA and other federal animal welfare statutes at the request of Animal Care.

21. Many IES investigators do not work out of local or field offices. Rather, they conduct their investigative work out of their homes. After IES investigators are completed with their investigations, they forward their investigative reports and related work product to the IES headquarters in Riverdale, Maryland. Agency personnel electronically scan and store the IES investigators' reports, notes, and work product in a centralized filing system located at the IES headquarters.

22. At its national headquarters, IES assigns a Program Support Assistant to serve as a liaison for my office for the purpose of locating IES records that are responsive to FOIA requests and appeals. Once my office requests a search for responsive records concerning an IES investigation, the liaison checks an internal IES tracking database to determine that status of the investigation. If the investigation is closed, the liaison will retrieve the investigative records from a central file room at the IES headquarters. If the IES investigation is open, the liaison will contact the IES investigator assigned to the investigation in order to obtain copies of the documents that have been generated up to that point in the investigation.

23. On or about April 20, 2005, my office contacted IES and Animal Care and requested both divisions to locate records responsive to FOIA case number 05-361, and to forward copies of such records to my office.

24. On or about June 9, 2005, my office learned that the IES investigation against the Culpepper and Merriweather Circus was finished. On July 10, 2005, my office received responsive records from the Animal Care-Western Regional Office.

25. My office was waiting for copies of responsive records from IES. Unfortunately, between June 2005 and October 2005, there was miscommunication between my office and IES as to whether IES forwarded copies of responsive records to my office. On or about October 24, 2005, my office received responsive records from IES. Upon receipt of the responsive records from both Animal Care and IES, my office began to process the FOIA request for case number 05-361.

26. On October 2, 2006, my office conducted a second effort to locate responsive records for case number 05-361. To this end, my office contacted IES and the Animal Care-Western Regional Office, and asked the respective divisions to conduct searches for responsive records.

27. On October 25, 2006, the Animal-Care Western Region forwarded documents to my office after conducting its second search. After comparing these documents with the documents that Animal Care produced in June 2005, my office discovered that, with the exception of one page, Animal Care produced duplicate records. On or about November 2, 2006, APHIS decided to release a copy of this record, which is an email message between Animal Care staff, to PETA. Attachment 13. (Please see the Index at page C297.)

28. On October 12, 2006, IES initiated a second search for responsive records. The second search revealed that the IES records on the Culpepper and Merriweather investigation that were stored at the IES headquarters were duplicates to the records that the IES headquarters provided to the APHIS FOIA office in October 2005.

29. In addition, on October 30 and 31, 2006, IES headquarters contacted IES field investigators to determine whether they had any additional responsive documents relevant to FOIA case number 05-361. The IES field investigators produced 6 pages of newly discovered responsive records. On or about November 2, 2006, APHIS decided to provide these 6 pages in redacted form to PETA. (These pages are referenced at pages C298-C303 on the Index.).

30. My staff also re-checked the files that my office maintained for FOIA case number 05-361. We discovered that 53 pages of responsive records were not processed for the FOIA request and appeal. APHIS processed these responsive pages, and on November 2, 2006, decided to provide PETA with 21 pages of these 53 pages in full, and the remaining 32 pages in redacted form. See Attachment 13. (Please see the Index at pages 265 - 296 for the redacted documents.)

31. With respect to the FOIA case number 05-361, which involves an investigation against the Culpepper and Merriweather Circus, APHIS determined that 303 responsive pages should be provided to PETA in redacted form, and 20 pages should be provided to PETA in full. APHIS determined that one page should be withheld in full. These figures incorporate the 54 pages of responsive documents uncovered during APHIS second set of searches.

32. In light of its organizational structure, APHIS pursued the most reasonable leads in efforts to obtain information responsive to the FOIA request and appeal submitted by PETA regarding the Culpepper and Merriweather Circus. IES maintains a national, central filing

system for its investigative materials for completed investigations. Therefore, searching for investigative materials for the Culpepper and Merriweather Circus investigation at the IES headquarters in Riverdale was logical. APHIS also employed reasonable means to locate responsive records by searching its regional Animal Care office, and contacting its field IES investigators. By conducting two searches, APHIS made a diligent effort to uncover records responsive to PETA's FOIA request.

<u>Application of the FOIA Exemptions to the Responsive Records at Issue</u>

33.     This matter concerns APHIS' use of FOIA exemptions to withhold information responsive to 3 FOIA requests and related appeals, which were submitted by PETA. APHIS contends that FOIA Exemptions 4, 6, and 7(C) apply to withhold responsive information in the manner so described in the Index accompanying this declaration.

34.     Exemption 4 of the FOIA protects trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. § 552(b)(4). APHIS applied Exemption 4 to redacted 4 pages from Culpepper and Merriweather Circus investigative file (case number 05-361). The redacted information reflects the banking account information of two businesses, both of which were parties to an agreement to lease elephants. This banking account information is revealed on copies of canceled checks and deposit slips, which were provided to an IES investigator by one of the parties to the agreement between the circuses.

35.     APHIS also invoked FOIA Exemption 6, which protects from disclosure personnel and medical files, and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

36. With respect to the responsive information to which APHIS applied Exemption 6, the records containing such information are "similar" files for the purposes of Exemption 6. These records pertain to, identify, or describe the conduct of individuals who were associated with the investigations conducted by APHIS that are at issue in FOIA case numbers 05-361, 05-634, and 05-803.

37. In deciding whether to apply Exemption 6 to the responsive information at issue, APHIS identified the privacy interests of the individuals affected by the responsive records. The affected individuals include, but are not limited to, individuals who cooperated with the IES investigators with the APHIS investigations at issue in FOIA case numbers 05-361, 05-634, and 05-803. APHIS balanced the privacy interests of the affected individuals against the public interest that would be advanced by the disclosure of the responsive information. Under the FOIA, the public interest would be served if disclosing responsive information would educate the public about the activities of APHIS or USDA.

38. With respect to the records that were redacted or withheld in full, APHIS determined that the privacy interests of the affected individuals outweighed significantly the public interest that would be advanced by the disclosure of the responsive information. In addition, APHIS concluded that the public interest that would be advanced by the disclosure of the responsive information would be minimal, if any. Therefore, APHIS invoked Exemption 6 to certain records in order to prevent clearly unwarranted invasions of personal privacy.

39. APHIS also invoked FOIA Exemption 7(C) to withhold responsive information. Exemption 7(C) protects from disclosure records or information compiled for law enforcement purposes, but only to the extent that producing such records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

40. USDA has authority under the AWA to investigate allegations of inhumane treatment towards animals. 7 U.S.C. § 2146. Allegations of inhuman treatment against animals were alleged in APHIS investigations at issue in case number 05-361 and 05-803. In addition, USDA is empowered under the AWA to investigate the handling and care of exotic animals by their owners. 9 C.F.R. § 2.131. The handling and care of an exotic animal was at issue in the APHIS investigation that was the subject of case number 05-634.

41. The scope of Exemption 7(C) covers information compiled for administrative or regulatory matters. Therefore, the investigative records at issue in case numbers 05-361, 05-634, and 05-803 were compiled in efforts to enforce AWA regulations, and therefore, meet the threshold requirements of Exemption 7(C).

42. In determining whether to apply Exemption 7(C) to the information at issue, APHIS considered the privacy interests of the individuals affected by responsive documents. APHIS balanced those privacy interests against the public interest in disclosure that would be advanced by releasing the information at issue. For the purposes of the FOIA, the public interest is promoted when the disclosure of responsive records sheds light on the conduct of APHIS or USDA.

43. As for the documents that were withheld or redacted under Exemption 7(C), APHIS determined that the privacy interests of the individuals implicated by the records significantly outweighed the public interests that would be advanced by the disclosure of the responsive information. With respect to those documents, APHIS applied Exemption 7(C) because releasing the information withheld under this exemption could reasonably be expected to constitute an unwarranted invasion of personal privacy.

44. APHIS relied upon Exemption 5 of the FOIA to redact two pages of responsive documents. These two pages are contained in the materials concerning FOIA case number 05-361. Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify for protection under Exemption 5, the records at issue must come from a government source, and they must fall within the coverage of privilege recognized in litigation.

45. The documents at issue are internal email messages among APHIS employees. Therefore, the responsive records qualify as inter- or intra-agency memorandums or letters. Further, the information redacted from these email messages would be protected from disclosure under the deliberative process privilege. The redacted information contains pre-decisional, recommendations from subordinate APHIS employees regarding the course of action that APHIS should take concerning an entity that allegedly violated the AWA. Hence, the redacted information reflects pre-decisional and deliberative comments by APHIS employees, which would qualify for protection under FOIA Exemption 5 through the deliberative process privilege.

46. The accompanying Index provides a detailed explanation, document by document, of the reasons that APHIS invoked FOIA Exemptions 4, 5, 6, or 7(C) to withhold responsive information. In considering the FOIA requests submitted by PETA, APHIS sought to segregate and release as much non-exempt information as permissible under the FOIA. With respect to records that were withheld in their entirety, APHIS determined that no meaningful portion could be reasonably released without revealing otherwise protected information. The records withheld in full were analyzed for segregability purposes. No reasonably segregable non-exempt information was withheld from Plaintiff.

47. APHIS considers FOIA requests and appeals on a case by case basis. APHIS does not have an official policy or practice of categorically withholding documents, particularly witness statements or affidavits, in response to FOIA requests and appeals.

I declare under penalty under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in Riverdale, Maryland, on this 2ND day in November, 2006.

_____
LESIA M. BANKS, MBA
Director, Freedom of Information and Privacy Act Staff
Legislative and Public Affairs
USDA, Animal and Plant Health Inspection Service