

**PeTA**

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS
501 FRONT ST.
NORFOLK, VA 23510
757-622-PETA
757-622-0457 (FAX)

PETA.org
info@peta.org

February 16, 2006

Administrator
Animal and Plant Health Inspection Service
Ag Box 3401
Washington, DC 20250-3401

Re:  Appeal of Partial Denial of FOIA Request 05-803

This is an appeal pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), of a decision by the Animal and Plant Health Inspection Service (APHIS) in which the agency claims exemptions for certain agency records which are the subject of a FOIA request submitted by People for the Ethical Treatment of Animals (PETA) on August 15, 2005. The response to this request was received by PETA on January 19, 2006. Copies of the request and the APHIS letter in response are attached for your reference.

As a preliminary matter, APHIS has failed to provide sufficient information to allow PETA to thoroughly evaluate the validity of the exemptions claimed. The agency's response includes 5 pages that are redacted in their entirety based on claims by APHIS that the information is exempt from disclosure pursuant to 5 U.S.C. §§ 522 (b)(5), (b)(6), and (b)(7)(C).  Specifically, three pages are identified by the agency as exempt pursuant to Exemption (b)(5) as information that is "deliberative and pre-decisional", and two pages are identified as exempt pursuant to Exemptions (b)(6) and (b)(7)(C) as information the release of which "would cause a clearly unwarranted invasion of personal privacy" and "information collected for law enforcement purposes …[that] could reasonably be expected to constitute an unwarranted invasion of personal privacy". Absolutely no information about the nature of the documents or the manner in which the exemptions were applied has been provided by the agency. (By logical deduction, PETA has concluded that at least two of pages are affidavits, as discussed further below.)

The agency cannot withhold public records with no more than the mere recitation of the language of the exemption. *See Mead Data Central, Inc. v. Department of the Air Force*, 402 F.Supp. 460 (D.D.C. 1974), remanded, 566 F.2d 242 (D.C. Cir. 1977) (Statement by the Air Force that 'Disclosure of these documents would inhibit the expression of candid opinions among Air Force personnel and adversely affect the decisional process within the Air Force" was insufficient to support a claim that the documents were exempt pursuant to Exemption 5). Moreover, please note that the FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of



AN INTERNATIONAL
ORGANIZATION DEDICATED
TO PROTECTING
THE RIGHTS OF ALL ANIMALS

ATTACH. 9

the portions which are exempt." 5 U.S.C. § 522(b). Thus, the agency must provide to PETA the non-exempt portions of the documents at issue.

It appears from the exhibit list contained in the *Report of Investigation* that at least two pages -- but possibly additional pages or even all five pages -- may be affidavits, even though the exemptions cited by the agency on the five pages are not uniform. Please note that until recently, the agency has routinely released affidavits to PETA. Moreover, in recent responses to other FOIA requests APHIS has relied on Exemptions (b)(6) and (b)(7)(C), with no reference to Exemption (b)(5), in its attempt to justify withholding some affidavits. The law has not changed, and PETA is at a loss to understand why APHIS is now withholding such information in violation of the FOIA.

Exemption (b)(5)

Exemption (b)(5) cannot be applied to withhold information contained in affidavits, if in fact the agency has applied the exemption in this manner. As discussed above, if the redactions made pursuant to Exemption (b)(5) involve documents other than affidavits, the agency must provide PETA with an adequate explanation of the nature of the documents and the information withheld as well as the manner in which Exemption (b)(5) was applied to the documents.

Exemption (b)(5) is limited to matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption incorporates the "executive privilege" which includes pre-decisional advice, recommendations, and opinions which are part of the deliberative, decision-making processes of the agency. *NLRB v. Sears, Robuck & Co.*, 421 U.S. 132, 150-54 (1975). An affidavit, by definition, is a declaration or statement of *facts* and thus its contents cannot be characterized as "deliberative and pre-decisional." Moreover, assuming *arguendo*, that an affidavit can contain deliberative and pre-decisional information, the exemption applies only to the "'opinion' or 'recommendatory' portion of [a document], not to factual information which is contained in the document." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 867 (D.C. Cir. 1980).

Regardless, in this case the agency has expressly incorporated the affidavits into its final decision regarding enforcement action against Le Mas Ltd., identifying and referencing them as evidence that supports the violations and attaching them to the *Report of Investigation*. Thus, the documents lose any protection they may have had under Exemption (b)(5). *See. e.g., Sears*, 421 U.S. at 161 (documents incorporated by reference in nonexempt documents lose any exemption they may have held as interagency memoranda).

Exemptions (b)(6) and (b)(7)(C)

Exemption (b)(6) applies to "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Exemption (b)(7)(C) applies to "records or information compiled for law enforcement purposes," but only to the extent that the production could "reasonably be expected to institute an unwarranted invasion of personal privacy." 5 U.S.C. § (b)(7)(C). However, if information in agency records does in fact threaten personal privacy, the correct application of these exemptions requires a balancing of the public interest in disclosure against the degree of invasion of privacy that would result from disclosure. *E.g.*, S. Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965); *Lesar v. DOJ*, 636 F.2d 472, 486 (D.C. Cir. 1980).. Moreover, the balance must tilt in favor of disclosure. *E.g.*, *Getman v. NLRB*, 450 F2d 670, 674 (D.C. Cir. 1971), *stay denied*, 404 U.S. 1204 (1971); *Congressional News Syndicate v. DOJ*, 438 F.Supp. 538, 542 (D.D.C. 1977).

In the present case, it is inconceivable how the "personal privacy" of any person will be invaded by the release of the information in the affidavits. Both the legislative history and the extensive subsequent case law clearly indicate that the exemptions are intended to protect *intimate* details in agency records. *E.g.*, S. Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965) (the exemption protects "intimate" or "personal" details in files); *Cohen v. EPA*, 575 F.Supp. 425, 429 (D. D.C. 1983) (exemption (b)(6) and (b)(7)(C) "cover related privacy interests, including those 'regarding marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation'") (internal citation omitted). PETA has no interest in the names or addresses or other similar information about non-government-employee affiants which is actually of a personal nature; this information can be withheld without objection. PETA and other members of the public *do* have an interest in the substantive content of the statements that relate to the care and treatment of the pigs, the circumstances that surrounded their cruel and unnecessary deaths, and the specifics of the investigation conducted by APHIS; and, it is apparent from the scope of exemptions (b)(6) and (b)(7)(C) that the public is entitled to this information.

Moreover, please note that the courts have determined that privacy rights protected by exemption (b)(6) are not a consideration when the information sought is that of a business, such as Le Mas Ltd. *E.g.*, <u>Washington Post Co. v. Dept. of Agriculture</u>, 943 F.Supp. 31, 36 n. 6 (D. D.C. 1996) ("corporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6") (internal citation omitted). Similarly, Exemption (b)(7)(C) does not recognize the same expectation of privacy in businesses as in individuals. *See, e.g., Rushford v. Civiletti*, 485 F. Supp. 477, 480 (D.D.C. 1980), *aff'd mem.*, 656 F.2d 900 (D.C. Cir. 1981) (exemption (b)(7)(C) "applies to matters which under normal circumstances 'would prove personally embarrassing to an individual ...'") (internal citations omitted). Thus, neither information about the actions of Le Mas

Ltd. nor statements made by Le Mas Ltd. are exempt from disclosure to the public.

Nor do the exemptions encompass an *individual's* business or professional activities, such as the actions of officers or employees of Le Mas Ltd. or the actions of APHIS personnel with regard to the deaths of the pigs and the ensuing investigation. *E.g., Sims v. CIA (I)*, 642 F.2d 562, 574-5 (D.C. Cir. 1980) ("Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships"); *Cohen*, at 429 (exemption (b)(7)(C) does not apply to information that is related to the professional or business activities of individuals; such information must be disclosed "even if a professional reputation is tarnished") (internal citations omitted). Thus, information about the pigs that was provided by officers or employees of Le Mas Ltd. or APHIS must be released.

And, of course, information about the tests that was provided by other witnesses, for example employees of Blackwater USA or law enforcement officials who may have witnessed the incidents at issue, would not reveal intimate or personal information about those witnesses and thus is not exempt from disclosure.

Nevertheless, even assuming *arguendo* that there are legitimate privacy concerns in this case under Exemptions (b)(6) and (b)(7)(C), the widespread use of live animals in both the public and private sectors to test various types of weaponry – from biological agents to "non-lethal" stun guns to ammunition -- has generated public debate throughout the country and abroad and thus the public interest in this matter weighs in favor of the release of the information at issue. Evidence of the extent of the public interest in the use of animals for such purposes can be documented easily with searches of the Internet that result in thousands of references to this topic.

For the reasons stated above, PETA requests that APHIS reconsider its decision to deny the release of the information and public records discussed above.

Thank you for your prompt attention to this appeal. If you have questions, I can be reached at 757-962-8329.

Sincerely,

Lori Kettler
Counsel
Research & Investigations Dept.