Civ. Action No. 06-930 (RMC)

EXHIBIT 30



January 18, 2006

Administrator
Animal Health and Plant Inspection Service
Ag Box 3401
Washington, DC 20250-3401

Re:   FOIA Appeal

This is an appeal pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6) of a decision by the Animal and Plant Health Inspection Service (APHIS) in which the agency claims exemptions for certain public records, and appears to have completely overlooked the request for other public records, which are the subject of a FOIA request submitted by People for the Ethical Treatment of Animals (PETA) on April 6, 2005. The response to this request was received by PETA on December 8, 2005. Copies of the request and the response from APHIS are attached for your reference.

As a preliminary matter, PETA's request for public records relates to the unexplained, premature deaths of two elephants in the custody of Culpepper & Merriweather Circus. The investigation report released by APHIS in response to the request makes little mention of the elephants. If the correct report was released, it appears that all substantive information related to the elephants has been redacted. The FOIA requires APHIS to release any "reasonably segregable" portion of a public record after deletion of the portions which are lawfully exempt. 5 U.S.C. § 552(b). PETA requests that APHIS consider this requirement carefully in its determination of the issues in this appeal.

Moreover, PETA requested *all* agency records related to the investigation, yet APHIS provided only a copy of the complaint and a copy of the "Report of Investigation" dated February 14, 2005. Please provide copies of all additional agency records immediately, including but not limited to correspondence, memoranda, meeting notes and minutes, notes and summaries of conversations, e-mails, and necropsy records.

The agency also denied access to all information contained in ten affidavits attached as exhibits to the agency's report of its investigation. The information in the affidavits has been redacted in full based on claims by the agency that the information is exempt from disclosure pursuant to 5 U.S.C. §§ 522 (b)(6) and b(7)(C). Exemption (b)(6) applies to "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Exemption (b)(7)(C) applies to "records or information compiled for law enforcement purposes," but only to the extent that the production could "reasonably be expected to institute an unwarranted invasion of personal privacy." 5 U.S.C. §

JAN 2 0 REC'D

(b)(7)(C). However, if information in agency records does in fact threaten personal privacy, the correct application of these exemptions requires a balancing of the public interest in disclosure against the degree of invasion of privacy that would result from disclosure. *E.g.*, S. Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965); *Lesar v. DOJ*, 636 F.2d 472, 486 (D.C. Cir. 1980). Moreover, the balance must tilt in favor of disclosure. *E.g., Getman v. NLRB*, 450 F2d 670, 674 (D.C. Cir. 1971), *stay denied*, 404 U.S. 1204 (1971); *Congressional News Syndicate v. DOJ*, 438 F.Supp. 538, 542 (D.D.C. 1977).

In the present case, it is not clear that the "personal privacy" of any person will be invaded by the release of the information in the affidavits, much less that a balance of interests is required. Both the legislative history and the extensive subsequent case law clearly indicate that the exemptions are intended to protect intimate or personal details in public records. *E.g.*, S. Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965) (the exemption protects "intimate" or "personal" details in files); *Cohen v. EPA*, 575 F.Supp. 425, 429 (D. D.C. 1983) (exemption (b)(6) and (b)(7)(C) "cover related privacy interests, including those 'regarding marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation'") (internal citation omitted). PETA has no interest in the names or addresses or other similar information about the non-government-employee affiants which is actually personal; this information can be withheld without objection. PETA and other members of the public *do* have an interest in the substantive content of the statements that relates to the care of the elephants, the circumstances that surrounded their untimely deaths, and the action or inaction of APHIS; and, it is apparent from the scope of exemptions (b)(6) and (b)(7)(C) that the public is entitled to this information.

Please note that the courts have determined that privacy rights protected by exemption (b)(6) are not a consideration when the information sought is that of a corporation, such as Culpepper & Merriweather Circus. *E.g.*, <u>Washington Post Co. v. Dept. of Agriculture</u>, 943 F.Supp. 31, 36 n. 6 (D. D.C. 1996) ("corporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6") (internal citation omitted). Similarly, Exemption (b)(7)(C) does not recognize the same expectation of privacy in corporations as in individuals. *See, e.g., Rushford v. Civiletti*, 485 F. Supp. 477, 480 (D.D.C. 1980), *aff'd mem.*, 656 F.2d 900 (D.C. Cir. 1981) (exemption (b)(7)(C) "applies to matters which under normal circumstances 'would prove personally embarrassing to an individual ...'") (internal citations omitted). Thus, neither information about the actions of the circus nor statements by the circus are exempt from disclosure to the public.

Nor do the exemptions encompass an *individual's* business or professional activities, such as the actions of elephant keepers or other circus employees or the actions of APHIS personnel with regard to the deaths of the elephants and the ensuing investigation. *E.g., Sims v. CIA (I),* 642 F.2d 562, 574-5 (D.C. Cir. 1980) ("Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships"); *Cohen*, at 429 (exemption

(b)(7)(C) does not apply to information that is related to the professional or business activities of individuals; such information must be disclosed "even if a professional reputation is tarnished") (internal citations omitted). Thus, information about the elephants that was provided by employees of the circus or APHIS must be released.

And, of course, information about the elephants that was provided by other witnesses, for example attendees of the circus or passers-by who merely happened to witness incidents related to the care and/or untimely deaths of the elephants, would not reveal intimate or personal information about those witnesses and thus is not exempt from disclosure.

Nevertheless, even assuming *arguendo* that there are legitimate privacy concerns in this case under Exemptions (b)(6) and (b)(7)(C), the untimely death of yet two more elephants at the hands of the entertainment industry has generated public debate throughout the country and abroad and thus the public interest in this matter weighs in favor of the release of the information at issue. Surely APHIS is aware of the extent of public outrage at two more unnecessary animal deaths and at what appears to be a failure by APHIS to provide adequate protections to these animals through its administration and enforcement of the AWA. Evidence of the extensive public interest in the performance of APHIS as well as the rampant violations of the AWA by circuses, and the relationship between these two concerns, can be documented easily with searches of the Internet that result in hundreds of references to these topics.

For the reasons stated above, PETA requests that APHIS reconsider its decision to deny the release of the information and public records discussed above.

Thank you for your prompt attention to this appeal. If you have questions, I can be reached at 757-962-8329.

Sincerely,

Lori Kettler
Counsel
Research & Investigations Dept.