**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civ. Action No. 06-930 (RMC) |
| v. | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff's Memorandum In Support of Its Cross-Motion for Summary Judgment ("Plf. Mem.") demonstrated that defendant Department of Agriculture ("USDA" or "Department") improperly withheld information under Exemptions 6 and 7(C) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and that the agency also adopted an illegal policy and practice of withholding witness statements in full under the privacy exemptions, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq. Defendant's opposition brief provides little of substance in response to plaintiff's arguments, particularly since defendant did not file a response to plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute (hereinafter "Plf. Statement of Facts") – and, thus, the Court may accept as true all of the facts presented in plaintiff's Statement of Facts. See LcvR 7.1(h); see also S.E.C. v. Banner Fund Intern., 211 F.3d 602, 616 (D.C. Cir. 2000) (district court is "fully justified in treating as admitted" the

-1-

party's statement of material facts where opposing party did not oppose the statement as required by the local rule).

Moreover, in failing to dispute plaintiff's Statement of Facts the USDA makes several critical concessions. Concerning plaintiff's pattern and practice claim, defendant apparently does not dispute that the Director of APHIS' FOIA staff announced at a meeting with various animal protection organizations just two months before plaintiff filed suit in this case that, based on "guidance" from USDA's Office of General Counsel, APHIS "changed" its long-standing practice and, under the "direction" of the Director, began withholding witness statements in full under the FOIA. See Plf. Statement of Facts ¶ 58, 59; see also Declaration of Debbie Leahy ("Leahy Decl.") ¶ 4, 6 (Exh. 5 Att. 4 to Plaintiff's Cross-Motion For Summary Judgment ("Plf. Mot.")); Declaration of Kathleen Conlee ("Conlee Decl.") ¶ 3 (Exh. 5 Att. 2 to Plf. Mot.); Declaration of Suzanne Roy ("Roy Decl.") ¶ 3 (Exh. 5 Att. 3 to Plf. Mot.). As such, this Court plainly has jurisdiction to review plaintiff's challenge to the agency's new practice. See, e.g., Better Gov't Ass'n v. v. Dep't of State, 780 F.2d  86, 93 (D.C. Cir. 1986) (permitting review of agency's application of Department of Justice FOIA guidelines).

As to its withholdings under FOIA Exemptions 6 and 7(C), the USDA offers very little aside from the same generic assertions it put forth in its summary judgment papers and supporting Vaughn Index. However, in light of the overwhelming public interest in the USDA's activities with respect to each of the investigations at issue, and in the USDA's consistent failure to enforce laws requiring the humane treatment of animals, the government has not carried its burden of proof to demonstrate that all of this information may lawfully be withheld under the FOIA. Thus, and as set forth more

fully below, the handful of arguments advanced by the government simply do not undercut plaintiff's

entitlement to summary judgment in this case.

## ARGUMENT

**I.      PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT THE USDA'S POLICY AND PRACTICE OF WITHHOLDING WITNESS STATEMENTS IN FULL VIOLATES THE FOIA.**

The USDA asserts several jurisdictional arguments concerning plaintiff's pattern and practice

claim.  Yet, remarkably, at no point during briefing in this case has the agency attempted to defend

its withholding of witness statements in full as consistent with the FOIA – most likely because the

record shows that the USDA initially withheld extensive non-personal and factual information that

could not possibly be protected by FOIA Exemptions 6 or 7(C).  See Plf. Statement of Facts ¶ 57;

see also, e.g., Exhibit 21 to Plf. Mot. (agency affidavit stating that "[t]he stage area is a standard

stage with an estimated 8 foot wide half circle walkway that arcs through the viewing public"); see

also, e.g., Lurie v. Dep't of Army, 970 F. Supp. 19, 43-44 (D.D.C. 1997) (withholding of factual

content of witness' statements was not justified under Exemption 6 or 7(C)).  Therefore, particularly

in light of APHIS' announcement in March 2006 that its new practice would be to withhold witness

statements in full under the privacy exemptions, see Plf. Statement of Facts ¶ 58, 59, the D.C.

Circuit's decision in Payne Enterprises dictates that plaintiff is entitled to equitable relief on its claim

that defendant's practice of withholding witness statements violates the FOIA.  837 F.2d 486, 494

(D.C. Cir. 1988).

Rather than address this clearly binding precedent, or dispute plaintiff's evidence

demonstrating that the USDA in fact did adopt a practice of withholding witness statements, the

USDA apparently argues that it is nevertheless entitled to summary judgment because: (1) two different and "independent" components of the USDA both withheld the same kind of information, Defendant's Opposition To Plaintiff's Cross-Motion For Summary Judgment And Reply To Plaintiff's Opposition To Defendant's Motion To Dismiss or, Alternatively, For Summary Judgment ("Def. Opp. Mem.") at 8-9, and (2) in response to this lawsuit Ms. Banks contends that APHIS does not "have" an "official" practice of withholding witness statements, id. at 7-8, 9-10.   These arguments have no merit for the following reasons.

A.     **Plaintiff Continues To Be Harmed By The Department of Agriculture's Practice of Withholding Witness Statements In Full Under The FOIA.**

The USDA attempts to avoid Bowen v. Massachusetts and its holding that APA review is appropriate when alternative statutory remedies do not provide a plaintiff with the precise form of relief it seeks, as is the case here, see 487 U.S. 879, 903-904 (1988); see also 5 U.S.C. § 704; Plf. Mem. at 40-42, by now contending that, even if review is appropriate under the APA, plaintiff is not entitled to any prospective relief because it has failed to demonstrate that the USDA has a "per se rule" of withholding witness statements under the FOIA. Def. Opp. Mem. at 7-8.  However, plaintiff plainly has demonstrated that, at the time the Complaint was filed, it was injured by the USDA's practice of withholding witness statements in full, since the practice forced plaintiff to file a federal lawsuit to obtain clearly non-exempt information.  Accordingly, plaintiff is entitled to equitable relief to prevent the USDA from withholding such information in the future.  See, e.g., Better Gov't Ass'n, 780 F.2d 86, 96 (D.C. Cir. 1986) (because plaintiff was injured by alleged illegal FOIA practice, it demonstrated sufficient ripeness and standing to pursue APA claim); see also Plf. Mem. at 39.[1]

_____

[1] The USDA appears to suggest that this Court's decision in Sierra Club v. U.S. Dep't of Interior precludes APA review even in a case, such as this, where plaintiff's claim is that an

Although, contrary to the USDA's argument, plaintiff need not prove the existence of a "department-wide" practice to obtain equitable relief, the fact that two "independent" components of the USDA both decided to withhold the same kind of information from plaintiff on privacy grounds indicates that these components <u>were</u> acting pursuant to a department-wide policy – a conclusion that clearly is bolstered by the testimony of animal welfare organizations that an APHIS FOIA officer stated that its new policy in this regard was based on "guidance" issued by the USDA's Office of General Counsel.  <u>See</u> Plf. Statement of Facts ¶ 58; <u>see</u> <u>also</u> Roy Decl. ¶ 3; Conlee Decl. ¶ 3.

In any event, plaintiff is entitled to equitable relief based solely on the actions of APHIS – which the USDA has not disputed – since, as an agency of the Department of Agriculture, <u>see</u> 7 C.F.R. §§ 2.80, 371.1, if APHIS adopts an unlawful regulation or policy concerning <u>its</u> processing of FOIA requests, such actions may be challenged in federal court whether or not any other USDA

_____

agency policy with respect to processing FOIA requests is illegal.  Def. Opp. Mem. at 7. Although the Court in <u>Sierra Club</u> ruled against the plaintiffs on their particular pattern and practice claim, the Court nevertheless recognized as "sound" the concept that, while FOIA "contains the procedure for judicial review" of the specific "challenged agency actions" – <u>i.e.</u>, the agency's withholding determinations in response to two specific FOIA requests and its denial of fee waivers – a plaintiff can also challenge an agency "practice" that violates the FOIA under the D.C. Circuit's decision in <u>Payne Enterprises</u>.  384 F. Supp. 2d at 30-31; <u>see also</u> <u>Dorsett v. U.S.</u> <u>Dep't of Treasury</u>, 307 F. Supp. 2d 28, 42-3 (D.D.C. 2004) (declining to provide FOIA requester injunctive relief concerning agency's failure to respond to FOIA requests because FOIA only provides courts jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"); <u>cf.</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 174-75 (1997) (allowing APA review of challenge to Secretary of Interior's implementation of the ESA because that statute did not provide an "adequate" or "exclusive" remedy).  Moreover, the basis for the Court's ruling against the plaintiffs was that the facts of the case were "very different from <u>Payne</u>" in that the agency adequately explained the reasons for its delay in responding to plaintiffs' FOIA requests.  <u>Sierra Club</u>, 384 F. Supp. 2d at 31.  Therefore, since here the USDA has not provided <u>any</u> explanation for its repeated practice of withholding witness statements on privacy grounds, <u>Sierra Club</u> simply does not prevent the Court from granting plaintiff equitable relief on this claim.

component adopts the same regulation or policy.  See also 7 C.F.R. § 1.3(e) (instructing USDA agencies to "promulgate regulations setting forth . . . information which would be of concern to a person wishing to request records from that agency"); cf. Animal Legal Defense Fund v. Veneman, 469 F.3d 826, 837 (9th Cir. 2006)  (plaintiffs may challenge APHIS decision not to finalize a draft policy concerning the treatment of primates).

Therefore, this case is quite different from City of Los Angeles v. Lyons, 461 U.S. 95 (1983), which is relied on by defendant, Def. Opp. Mem. at 8, since, here, the Director of APHIS' FOIA Office has publicly announced to numerous animal protection groups that she "changed" APHIS' practice concerning FOIA requests for witness statements and instead now withholds such information under the FOIA's privacy exemptions, Plf. Statement of Facts ¶ 59; Leahy Decl. ¶ 4, 6. See also Lyons, 461 U.S. at 106 (plaintiff would have standing if illegal conduct of police officers was "ordered or authorized" by the City).  Further, plaintiff relies on much more than just a single, isolated incident (in that case, use of a police choke hold) to demonstrate that it continues to be injured by this policy.  Id.  In fact, defendant has withheld the same type of information from plaintiff on at least four different occasions since 2005.  Plf. Statement of Facts ¶ 56.  Therefore, since plaintiff "routinely" requests this type of information from the USDA under the FOIA, there is no speculation as to whether plaintiff will again be subject to the USDA's new – unlawful – practice. Id. ¶ 5 (emphasis added).   See Natural Law Party of U.S. v. FEC, 111 F. Supp. 2d 33, 43 (D.D.C. 2000) (distinguishing Lyons because it "involved a single, isolated incident of allegedly illegal conduct so unlikely to be repeated that the threat of future injury was deemed too attenuated to support constitutional standing").

Furthermore, in light of APHIS' prior public statements on this matter, Ms. Banks' post-complaint assertion that APHIS does not <u>currently</u> have an "official" policy or practice with respect to witness statements, <u>see</u> Banks Decl. ¶ 47, has no bearing on whether plaintiff was forced to file this lawsuit to obtain access to the witness statements that were withheld in full by the agency, and that there is a high likelihood that it will be denied such information in the future absent plaintiff's willingness to go to court, particularly since defendant has not provided any evidence to dispute the existence of an "unofficial" APHIS policy concerning its withholding of witness statements.  <u>See e.g.</u>, <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.</u>, 528 U.S. 167, 189 (2000) (voluntary cessation of illegal conduct does not moot plaintiff's claim).[2]

Accordingly, plaintiff clearly has made a sufficient showing of an illegal policy and practice to warrant the issuance of injunctive and declaratory relief to prevent defendant from withholding non-exempt witness statements from the public in the future.  <u>See</u> <u>Better Gov't Ass'n</u>, 780 F.2d 86, 96 (D.C. Cir. 1986) (plaintiff organizations demonstrated sufficient challenge of an agency's practice of applying Department of Justice FOIA guidelines); <u>see also</u> <u>Federal Election Com'n v. Akins</u>, 524

---

[2] Indeed, if Ms. Banks' assertion that APHIS does not "have" an "official" policy or practice means that APHIS rescinded its policy <u>after</u> plaintiff's lawsuit was filed – as would appear to be the case here since APHIS previously announced that it did institute such a practice – a pattern and practice claim is not moot unless the government meets a "heavy burden" to demonstrate that "there is no reasonable expectation . . . that the alleged violation will recur." <u>Payne Enterprises</u>, 837 F.2d at 491.  Thus, in <u>Payne Enterprises</u>, the Court rejected as insufficient to carry this burden the affidavit of an Air Force major, even though the affidavit stated that the plaintiff's FOIA requests "will not be denied in the future." <u>Id.</u> at 492.  The government's affidavits in this case provide even less assurance than that which was held to be insufficient by the D.C. Circuit in <u>Payne Enterprises</u> since, here, neither Ms. Banks nor Ms. MacNeil have made <u>any</u> reference to whether the agency will withhold such information in the future, <u>see</u> Supp. MacNeil Decl. ¶ 2; Banks Decl. ¶ 47, and the USDA has refused to stipulate that it will cease engaging in this practice in the future.  <u>See</u> Joint Rule 16.3 Report at 4.  Accordingly, under <u>Payne Enterprises</u> the government's claim that it currently do not "have" a practice of withholding witness statements is not determinative of the issues here.

U.S. 11, 21 (1998) (plaintiff organization is injured when it is denied information to which it is entitled by law); see also Abigail Alliance for Better Access to Dev't Drugs v. Exchenbach, 469 F.3d 129, 132-33 (D.C. Cir. 2006) (organization was sufficiently injured by FDA policies where it alleged that it had to "divert significant time and resources from [its] activities toward helping its members and the public address" them); 31 Foster Children v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003) (plaintiff is sufficiently injured because "when the threatened acts that will cause injury are authorized or part of a policy" it is significantly more likely that the injury will occur again).

### B. Plaintiff's Claim Is Ripe For Judicial Review.

Defendant alternatively relies on Aulenback v. FHA, 103 F.3d 156 (D.C. Cir. 1997), as a basis for its claim that this Court lacks jurisdiction to review plaintiff's pattern and practice claim. Def. Opp. Mem. at 8. However, Aulenback – a ripeness case – provides no basis for departing from the D.C. Circuit's holding in Payne Enterprises that a claim challenging even an "informal" agency practice of withholding information under the FOIA is ripe for review – i.e., the issues are fit for review and there would be hardship to the plaintiff if the court withheld its consideration. See 837 F.2d at 491, 493 (an "informal" policy was sufficiently "crystallized" to be ripe for judicial review).

Aulenback involved a challenge to a Federal Highway Administration manual concerning the agency's exercise of its enforcement authority – an area that, according to the Court and unlike the USDA's decision making authority at issue here, "warrant[s] considerable deference." 103 F.3d at 168 (internal citations omitted). Moreover, in ruling that the enforcement manual was not ripe for review, the Court relied on the fact that the agency did not have the opportunity to provide an "authoritative interpretation of the relevant provisions" of the manual. Id. at 167. Far from the situation in Aulenback, here plaintiff has sought and obtained the agency's authoritative view that

-8-

beginning in 2005 it began redacting entire witness statements under FOIA Exemptions 6 and 7(C) because "employees of entities licensed by the USDA who were targets of investigations were more likely to speak freely to USDA investigators if they knew that their employers would not be able to read the statements." Plf. Statement of Facts ¶ 59; see also Leahy Decl. ¶ 6.

Therefore, this case is more appropriately considered under the framework of Payne Enterprises, which is discussed at length in plaintiff's opening brief, Plf. Mem. at 35-40, and Better Gov't Ass'n, in which the Court of Appeals held that a challenge to the Interior Department's application of Department of Justice guidelines concerning fee waiver requests under FOIA was ripe for review even though the agency claimed its practice was "informal," because "the agency has stated that the action in question governs and will continue to govern its decisions." 780 F.2d 86, 93 (D.C. Cir. 1986) (emphasis in original). Thus, where, as here, an agency has publicly announced to a particular class of FOIA requesters that it has "changed" its practice with respect to its processing of FOIA requests, see Leahy Decl. ¶ 4, 6, the court has jurisdiction to review the legality of that new policy. Better Gov't Ass'n, 780 F.2d at 93; see also Payne Enterprises, 837 F.2d at 491-94 (an "informal" policy was ripe for judicial review).

Moreover, consistent with the "flexible" and "pragmatic" approach taken by courts, see Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 435-36 (D.C. Cir. 1986), the USDA's new policy governing its processing of FOIA requests for witness statements is "final agency action" regardless of whether plaintiff provides any "written" evidence of it, Def. Opp. Mem. at 10, because it: (1) "marks the consummation of the agency's decision making process" and is not "tentative or interlocutory;" and (2) is one by which "rights or obligations have been determined, or from which legal consequences flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997); see also Better Gov't Ass'n, 780 F.2d at 93

(agencies' "informal" use of Department of Justice fee waiver guidelines was final); Animal Legal

Defense Fund v. Veneman, 469 F.3d 826, 837 (9th Cir. 2006) (announcement made by USDA

representative to abandon a draft policy was "final agency action"); cf. De La Mota v. U.S. Dep't of

Educ., 2003 WL 21919774, *8 (S.D.N.Y. Aug. 12, 2003), rev'd on other grounds, 412 F.3d 71 (2d

Cir. 2005) (email correspondence from an agency employee was "final agency action").[3]

Accordingly, the policy at issue here is "final agency action" within the meaning of the APA

and otherwise ripe for review.

## II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT THE USDA HAS IMPROPERLY WITHHELD INFORMATION UNDER FOIA EXEMPTIONS 6 AND 7(C).

### A.    The Public Interest In The Content Of A Witness' Statement To The USDA Outweighs The Asserted Privacy Interests.

In response to plaintiff's demonstration that there is a significant public interest in the content

of a witness' statement, contained in a CD recording, concerning the well-publicized attack on Roy

Horn, the USDA still has failed to substantiate its contention that there is any risk that if the

recording is released any one could recognize the voice of this particular individual and, as result,

subject this person to "harassment" or "substantial inquiry."   Exh. 2 to Defendant's Motion to

Dismiss or, Alternatively, for Summary Judgment ("Def. Mot.") at 23; see also Def. Opp. Mem. at

_____

[3] Nor is it relevant that the USDA ultimately released the witness statements sought by plaintiff, since the agency did so only after plaintiff was forced to file an administrative appeal – and a lawsuit in federal court – to dislodge the information.  See Payne Enterprises, 837 F.2d at 488 (plaintiff entitled to relief on claim that agency practice of withholding information violated FOIA even though agency consistently released information to requester once an appeal was filed); see also General Electric Co. v. EPA, 290 F.3d 377, 380 (D.C. Cir. 2002) ("fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at this moment") (quoting Appalachian Power Co. v. EPA, 208 F.3d 1015, 1022 (D.C. Cir. 2000); Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1282 (D.C. Cir. 2005).

5-7.  Moreover, critically, the USDA also did not respond to plaintiff's argument that, even if the agency had submitted some proof of this privacy interest, it nevertheless failed to release all segregable material, as required by the FOIA, by taking steps to disguise the sound on the recording. Def. Opp. Mem. at 5-7; compare Def. Mem. at 28 n. 4.  Accordingly, as before, the government simply has not carried its burden to demonstrate that this recorded statement may be withheld in its entirety under FOIA Exemptions 6 and 7(C).

Thus, the government inexplicably continues to insist that release of the content of the statement would "reveal nothing about APHIS activities," Def. Opp. Mem. at 6; Exh. 2 to Def. Mot. at 23, even though plaintiff demonstrated that all information concerning the attack on Mr. Horn, or in any way related to the conditions under which the animal was kept or exhibited, would contribute to the public's understanding of whether it was reasonable for the USDA to forego issuing any penalties against this particular animal exhibitor.  See  Plf. Mem. at 3-5, 25-6; see also CBS News, Roy Horn Mauling Case Closed (June 28, 2005) (Exh. 14 to Plf. Mot.) ("The USDA issued a letter of non-compliance to the illusionist's production company, S & R Productions, but the warning did not carry any penalties").  Such matters must be taken into account in balancing the public and private interests because they fall squarely within the FOIA's core purpose of shedding light on the operations of the government.  See Nation Magazine, Washington Bureau v. United States Customs Serv., 71 F.3d 885, 894-95 (D.C. Cir.1995)  (records about an individual's activities "may still be cloaked with the public interest if the information would shed light on agency action").

Indeed, the government's Vaughn Index does not even describe the subject matter of the witness's statement.  See Exh. 2 to Def. Mot. at 23.  Accordingly, the Court has no basis for making a de novo determination as to the significance of the competing public and private interests – e.g.,

did the statement concern highly relevant matters, such as the conditions under which the tiger was kept and exhibited, or did the statement pertain to far less relevant matters, such as the weather on the night of the incident. Therefore, by failing to elaborate at all on the content of the statement, the government's balancing process amounts to little more than an "empty formality." See, e.g., Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 33 (D.C. Cir. 1998) (agency did not carry burden of proof where it made an "abstract attempt to identify possible public interests in disclosure and accorded these interests surprisingly little weight").

On the alleged privacy interest side of the equation, the USDA's heavy reliance on New York Times v. Nat'l Aeronautics & Space Admin. is unavailing. There, the Court held that a tape recording of the voices of the astronauts aboard the Challenger space shuttle in their last moments of life – all of whom were already well known to the public – qualifies as a "similar file" under Exemption 6. 920 F.2d 1002, 1004, 1009-10 (D.C. Cir. 1990)). However, this merely underscores the importance of the agency's obligation to carefully consider and articulate both the private and public interests at stake. Indeed, far from the highly private and "intimate" nature of the voice recording of the well-known astronauts sought in the New York Times cases, 782 F. Supp. 628, 631 (D.D.C. 1991), the government here simply has failed to provide any proof that, without releasing the name of the witness, it is even remotely possible that this individual – one of over 1500 others who witnessed or in some way were involved in the Horn incident – could be identified by anyone by the sound of his or her voice.

Even if the government could substantiate such a highly speculative assertion, it has not demonstrated with the requisite specificity that it nevertheless has segregated and released all non-exempt information contained on the audio recording, as required by the FOIA, 5 U.S.C. § 552(b).

-12-

Indeed, the USDA does not dispute that it is certainly possible to edit the recording in such a way that release of the recording would not reveal the caller's identity, by altering the sound or speed of the recording.  See Plf. Mem. at 27; Plf. Statement of Facts ¶ 54-5.  The ease with which the agency could release to plaintiff the substance of the recorded statement – which, again, defendant does not contend is of a private nature – completely undermines defendant's generic assertion that "[n]o reasonably segregable non-exempt information was withheld from Plaintiff."  Banks Decl. ¶ 46.

Moreover, as previously demonstrated, Plf. Mem. at 28, such conclusory statements simply do not satisfy the agency's burden of proof.  Compare Dorsett v. U.S. Dep't of Treasury, 307 F. Supp. 2d 28, 40-41 (D.D.C. 2004) (agency declaration did not satisfy segregability requirement where it stated merely that the agency "has released to plaintiff all material that could be reasonably segregated from withheld material" after "[a] review of the responsive documents") with Banks Decl. ¶ 46 ("[w]ith respect to records that withheld in their entirety, APHIS determined that no meaningful portion could be reasonably released without revealing otherwise protected information. The records withheld in full were analyzed for segregability purposes.  No reasonably segregable non-exempt information was withheld from Plaintiff").  Accordingly, the information contained on the CD recording must be released.

**B.    The Public Interest In The Names Of USDA Inspectors Who Engaged In Misconduct At The Agriprocessors Facility Far Outweighs The Privacy Interests Of These Federal Employees.**

As demonstrated in plaintiff's opening brief, there is an overwhelming public interest in knowing the identities of USDA inspectors stationed at the Agriprocessors facility, because the USDA's Office of Inspector General concluded that these individuals engaged in various forms of "misconduct" – including by failing to take any action while employees of the facility engaged in

-13-

rampant "inhumane" slaughter techniques and also by accepting meat products from company

employees, see Plf. Mem. at 3-5 – and because the USDA's systemic failure to adequately enforce

laws requiring the humane treatment of animals is a matter of significant concern to the public.  See

id.; see also, e.g., United States General Accounting Office, Humane Methods of Livestock Slaughter

Act: USDA Has Addressed Some Problems But Still Faces Enforcement Challenges (January 2004),

at http://www.gao.gov/htext/d04247.html (last visited on Feb. 20, 2007).  In response, defendant

contends that because these are "low level inspectors," the public interest in the names of these

individuals is only "nominal" and is therefore outweighed by the alleged privacy interests.  Def. Opp.

Mem. at 4. However, the mere fact that these particular inspectors are not "high level" officials does

not automatically exempt their names from disclosure under Exemption 6 or 7(C). [4]

---

[4] Contrary to defendant's complaint in footnote 1 of its opposition brief, the sources cited
by plaintiff in its Memorandum In Support Of Its Cross-Motion for Summary Judgment (Exhs.
46 and 51) indisputably demonstrate that the USDA (and not simply a U.S. Attorney's Office),
did in fact decline to take any legal action against Agriprocessors.  See Donald G. McNeil, Jr.,
Inquiry Finds Lax Federal Inspections at Kosher Meat Plant, N.Y. Times, March 10, 2006 (Plf.
Ex. 46) ("In September, the department told the plant that in light of those changes 'legal action
will not be instituted at this time' but warned that future violations could lead to it"); Orlan Love,
Meat Plant Violated Cruelty Laws, The Gazette, March 11, 2006 (Exh. 51 to Plf. Mot.) (quoting
USDA's Director of Evaluation and Enforcement as saying "we have determined that legal action
will not be instituted at this time").  As pointed out by defendant, these sources also demonstrate
that the USDA only imposed minor sanctions on its own employees, despite the fact that the OIG
determined the USDA employees were engaging in blatant misconduct.  See Love, supra (Exh.
51 to Plf. Mot.); McNeil, supra (Exh. 46 to Plf. Mot.).  The fact that plaintiff referred to the
"OIG" – an office within the USDA – instead of the USDA is completely immaterial to
plaintiff's overarching point that there is considerable public debate and interest in the fact that
the USDA has demonstrated a systemic failure to enforce the Animal Welfare Act and other
statutes requiring the humane treatment of animals.

Further, contrary to defendant's assertion in footnote 2 of its opposition brief, plaintiff correctly
stated in its memorandum that the USDA's Inspector General's Office initially withheld 13
witness statements from its investigation report pursuant to the Privacy Act, see Plfs. Mem. at 18;
McNeil Decl. ¶ 27 (Exh. 3 to Def. Mot.) ("I withheld 13 witness statements pursuant to the
Privacy Act (PA), 5 U.S.C. § 552a(j)(2) and (k)(2)"), and that, only after plaintiff filed this

As defendant appears to concede, the rank of a federal employee is just one among several "factors" that are considered in determining whether the public interest in disclosure outweighs the privacy interests at stake. Def. Opp. Mem. at 4 (quoting O'Keefe v. U.S. Dep't of Defense, 463 F. Supp. 2d 317, 327 (E.D.N.Y. Nov. 30, 2006)). In this case, there are numerous countervailing factors, including (as previously explained) the fact that these inspectors engaged in extensive "misconduct," that the agency has a history of failing to adequately enforce laws that require the humane treatment of animals, and that revealing the identities of the federal inspectors is key to vindicating the public's interest in knowing whether these individuals have engaged in similar misconduct elsewhere and whether they continue to be employed at this or other facilities – so that the public may prevail upon the USDA to take appropriate action to rectify such blatant misconduct within the agency. See Plf. Mem. at 28-32. In light of these additional and extremely relevant factors, the public interest in knowing the identities of the federal inspectors at issue here outweighs the potential "privacy" interests at stake.

Indeed, as federal employees, the "privacy" interests of these inspectors in being shielded from public criticism regarding the execution of their official public duties are less substantial than those of private individuals who seek to protect their personal information from being publicly disclosed. See, e.g., Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984) (federal employee has diminished privacy interest in censure letters); Lesar v. Dep't of Justice, 636 F.2d 472, 487 (D.C.

---

lawsuit did the OIG belatedly decide to release the witness statements, but redact certain information pursuant to Exemptions 6 and 7(C) of the FOIA, see Plf. Mem. at 18; McNeil Decl. ¶ 33 (Exh. 3 to Def. Mot.) ("I have reviewed the 13 witness statements that were withheld previously, and have decided to release all 47 pages, with redactions made pursuant to FOIA, 5 U.S.C. §552(b)(6) and (7)(C)"); Exh. 4 to Def. Mot. (OIG Vaughn Index) (showing OIG's redaction of names of inspectors pursuant to FOIA Exemptions 6 and 7(C)).

Cir. 1980) ("FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens"); see also Lissner v. U.S. Customs Serv., 241 F.3d 1220, 1223 (9th Cir. 2001) ("by becoming public officials, their privacy interests are somewhat reduced"). The Second Circuit's decision in Halpern v. FBI, relied on by defendant, Def. Opp. Mem. at 3-4, also recognized that the privacy interests of federal employees are not as "strong" as those of private individuals. 181 F.3d 279, 296-97 (2d Cir. 1999).

Moreover, Halpern's holding that government employees have privacy interests "to the extent that revelation of their identities 'could subject them to embarrassment and harassment'" does not help the government here since, with respect to USDA inspectors (as opposed to USDA-employed investigators), the Office of Inspector General has not alleged any such risk in its Vaughn Index. See, e.g., Exh. 4 to Def. Mot. (Office of Inspector General's Vaughn Index) at 1. Rather, and as explained in plaintiff's opening brief, Plf. Mem. at 30-31, the USDA simply has not carried its burden to demonstrate with any specificity that release of the names of the USDA inspectors at issue here could in any way "violate his or her privacy interests," as is asserted by the agency, see, e.g., Exh. 4 to Def. Mot. at 2. See Billington v. U.S. Dep't of Justice, 233 F.3d 581, 584 (D.C. Cir. 2000) (conclusory statements will not satisfy segregability duty); see also Washington Post Co. v. U.S. Dep't of Health & Human Serv., 690 F.2d 252, 262 (D.C. Cir. 1982) (conclusory assertion of privacy expectation are not sufficient under the FOIA). Accordingly, since the government has not carried its burden of proof, and since the balance weighs in favor of disclosure, plaintiff is also entitled to summary judgment on this claim.[5]

---

[5] Since defendant has not responded to plaintiff's argument concerning the USDA's withholding of information related to the USDA's investigation of Law Enforcement Ammunitions Sales for violations of the AWA, plaintiff has nothing more to add to its opening

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiff's opening brief, plaintiff respectfully requests that the Court grant plaintiff's Cross Motion for Summary Judgment.

Respectfully submitted,

_____/s/ Erin M. Tobin_____
Erin M. Tobin
(D.C. Bar No. 494948)
Katherine A. Meyer
(D.C. Bar No. 244301)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Date:   February 20, 2007          Attorneys for Plaintiff

---

brief on this point.  <u>See</u> Plf. Mem. at 32-4.