UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| PEOGLE FOR THE ETHICAL TREATMENT OF ANIMALS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 06-930 (RMC) |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The People for the Ethical Treatment of Animals ("PETA") filed this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the U.S. Department of Agriculture ("USDA"). PETA seeks release of (1) the redacted portions of documents related to the identity of inspectors who allegedly engaged in misconduct while inspecting a slaughterhouse operated by AgriProcessors, Inc. ("AgriProcessors"); (2) a CD recording of a witness's phone call to USDA regarding the tiger attack on performer Roy Horn; and (3) the redacted portion of affidavits naming the location where alleged Animal Welfare Act violations by Law Enforcement Military Ammunition Sales took place. PETA also alleges that USDA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, through its alleged practice of withholding witness statements in their entirety instead of merely redacting the names of the witnesses. USDA filed a motion to dismiss or for summary judgment asserting that the information withheld was not subject to disclosure under FOIA and PETA has failed to state an APA claim. PETA filed a cross-motion for summary judgment. As explained below, the Court will grant in part and deny in part the parties' motions.

## I. BACKGROUND FACTS

PETA is an animal protection organization dedicated to ending cruelty to animals. Am. Compl. ¶ 3. As part of its mission, PETA monitors USDA's enforcement activities and advocates for stronger protection for animals through enforcement of the Animal Welfare Act, 7 U.S.C. §§ 2131-2159, and the Humane Methods of Livestock Slaughter Act, 7 U.S.C. §§ 1901-1906. *Id*. ¶¶ 1 & 3. PETA regularly requests information from USDA regarding investigations and conveys this information to the public. *Id*. ¶ 4. In this action, PETA challenges the USDA's response to three FOIA requests.[1]

First, on June 28, 2005, PETA submitted a FOIA request to Animal and Plant Health Inspection Service ("APHIS"), a component of USDA, seeking APHIS's final report concerning a white tiger's mauling of performer Roy Horn during the Las Vegas show "Siegfried and Roy." Am. Compl. ¶ 15; Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss or for Summ. J. ("Def.'s Mem.") Ex 1, Decl. of Lesia Banks ("Banks Decl.")[2] ¶ 8. On July 14, 2005, APHIS disclosed to PETA portions of the report. Am. Comp. ¶ 16; Banks Decl. ¶ 8. APHIS withheld several supporting

---

[1] PETA originally alleged a fourth claim, that USDA improperly withheld records responsive to PETA's April 6, 2005 request related to the death of two elephants from the Culpepper and Merriweather Circus. Am. Compl. ¶ 13; Joint Rule 16.3 Report, filed Sept. 11, 2006. USDA in its motion to dismiss or for summary judgment detailed its search for these records, described its release of records, and explained its reasons for withholding certain information pursuant to various FOIA exemptions. PETA did not contradict USDA's motion on this issue, and thus it is conceded. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

[2] The Banks Declaration is the statement of Lesia M. Banks. Ms. Banks is employed by USDA as the Director of the Freedom of Information and Privacy Act Staff, Legislative and Public Affairs, in APHIS.

affidavits, citing the personal privacy provisions set forth in FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) & (7)(C). Am. Compl. ¶ 17. APHIS also withheld a CD recording of a telephone message from a witness regarding the tiger attack. *Id*.

Second, PETA submitted a FOIA request on August 15, 2005, seeking a copy of USDA's report of the investigation regarding the alleged violation of the Animal Welfare Act by Law Enforcement Military Ammunition Sales ("Le Mas"). *Id*. ¶ 19. PETA alleges that Le Mas, an ammunition distributor, shot and killed pigs to demonstrate the efficacy of its bullets to U.S. military and law enforcement agencies. *Id*. On January 12, 2006, USDA released responsive records but withheld two witness affidavits under FOIA Exemptions 5, 6, and 7(C), 5 U.S.C. § 552(b)(5), (6) & (7)(C). *Id*. ¶ 20; *see also* Banks Decl. ¶ 10.

Third, on October 26, 2005,[3] PETA submitted a FOIA request to the Office of Inspector General ("OIG"), USDA, seeking the OIG's report of the investigation of AgriProcessors related to alleged violations of the Humane Methods of Livestock Slaughter Act. Am. Compl. ¶ 22. OIG released some responsive records on February 28, 2006, but withheld thirteen witness statements, alleging they were exempt from disclosure under the Privacy Act, §§ 552a(j)(2) and 552a(k)(2). *Id*.

PETA appealed the partial denials of its four FOIA requests. *Id*. ¶¶ 14, 18, 21, 23. It did not receive a response within twenty days, and as a result, PETA filed this lawsuit on May 17, 2006. *Id*. ¶ 24. PETA then filed a two-count First Amended Complaint on June 15, 2006. In count one, PETA challenges the USDA's response to the FOIA requests described above. *Id*. ¶¶ 27-29.

---

[3] PETA originally made this request on July 7, 2005, but was told that documents could not be provided because the documents related to an open investigation. PETA then made this same request again on October 26, 2005, after the investigation had closed. Def.'s Mem. Ex. 3, MacNeil Decl. ¶¶ 5, 12-13.

In count two, PETA alleges a claim under the APA contending that USDA has an arbitrary practice or policy of withholding witness statements in their entirety, instead of releasing them with personal information redacted. *Id*. ¶¶ 30-31. PETA's First Amended Complaint seeks declaratory and injunctive relief.[4] *Id*., Prayer for Relief at 10.

Subsequently, on July 17, 2006, APHIS released the witness statements and affidavits relating to the tiger attack and the Le Mas ammunition testing described above, but redacted the names and personal identifying information pursuant to Exemptions 6 and 7(C). Def.'s Mem. Ex. 1, Banks Decl. ¶¶ 13-15; *id*. Ex. 2, Vaughn Index.[5] APHIS continued to withhold in its entirety the CD audio recording regarding the tiger attack. Def.'s Mem. Ex. 1, Banks Decl. ¶ 14. On July 14, 2006, OIG released the witness statements and report relating to the AgriProcessors investigation, but also redacted the names and personal identifying information pursuant to Exemptions 6 and 7(C). Def.'s Mem. Ex. 3, MacNeil Decl. ¶ 33.

USDA filed a motion to dismiss or for summary judgment arguing that it has fully and adequately complied with PETA's FOIA requests and that PETA does not have a viable APA claim. PETA filed a cross-motion for summary judgment. The motions are fully briefed and ready for decision.

## II. STANDARD OF REVIEW

In presenting its motion to dismiss or for summary judgment, USDA relies on

---

[4] PETA asks that the Court declare that USDA violated FOIA by improperly withholding records; that USDA violated the APA by adopting a policy and practice of withholding entire witness affidavits and statements; and that the Court order USDA to release the requested records.

[5] The D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) requires agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the agency's nondisclosure justification.

information outside the pleadings, such as the Banks and MacNeil declarations and the Vaughn Index. Because matters outside the pleadings are presented, the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary

judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation marks omitted).

### III. ANALYSIS

#### A. Personal Privacy Under FOIA Exemptions 6 and 7(C)

Under FOIA, federal agencies must release agency records upon request, unless one of nine exemptions applies. 5 U.S.C. § 552. "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Even though FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted). The

exemptions should be narrowly construed. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *Tax Analysts*, 492 U.S. at 142. If the agency believes that an exemption applies, the agency still is required to disclose "any reasonably segregable portion of the record" that is not exempt from disclosure. PETA complains that APHIS and OIG improperly redacted information that was not exempt from release. USDA contends that because the personal privacy provision set forth in FOIA Exemptions 6 and 7(C) applies, APHIS and OIG properly withheld information.

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly *unwarranted invasion of personal privacy*." 5 U.S.C. § 522(b)(6) (emphasis added). Exemption 7(C) also exempts disclosure of information based on privacy concerns by permitting an agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an *unwarranted invasion of personal privacy*." 5 U.S.C. § 522(b)(7)(C) (emphasis added). Unlike Exemption 6, which allows nondisclosure only when a document would constitute a "clearly" unwarranted invasion of privacy, Exemption 7(C) does not require a balance tipped in favor of disclosure. *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). While USDA cites both exemptions, its motion relies on the broader exemption, Exemption 7(C).

Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure "could subject them to

embarrassment and harassment in the conduct of their official duties and personal affairs." *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999).[6] "[A]n employee has at least a minimal privacy interest in his or her employment history and job performance evaluations. That privacy interest arises in part from the presumed embarrassment or stigma wrought by negative disclosures. But it also reflects the employee's more general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file." *Stern*, 737 F.2d at 91 (citations omitted).

To determine whether an agency has properly invoked the personal privacy exemption, the court must balance the public interest in disclosure against the privacy interest the exemption is intended to protect. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989) (balancing test applies to Exemption 7(C)); *see also Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (balancing test applies to Exemption 6). In applying this balancing test, courts consider the nature of the document at issue and the document's relation to the core purpose of FOIA, that is, "to open agency action to the light of public scrutiny." *Reporters Comm.*, 489 U.S. at 774. The purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id*. at 773. Thus, in *Reporters Committee*, the Supreme Court held that Exemption 7(C) protected from disclosure the FBI rap sheets of individuals accused of improperly obtaining defense contracts through a corrupt Congressman. The Court explained that while there was some public

---

[6] Individuals have an even stronger privacy interest insofar as the material suggests that they were at some time subject to criminal investigation. *Halpern*, 181 F.3d at 297 (citing *Reporters Comm.*, 489 U.S. at 767)); *Stern*, 737 F.2d at 92. Further, innocent parties whose names appear in law enforcement records are entitled to the highest degree of privacy. *Iglesias v. CIA*, 525 F. Supp. 547, 563 (D.D.C. 1981).

interest in obtaining the information, disclosure would not fall within the central purpose of FOIA because it would reveal nothing about the behavior of the Congressman or the Department of Defense. *Id*. at 774.

In *O'Keefe v. Dep't of Defense*, 463 F. Supp. 2d 317 (E.D.N.Y. 2006), the court balanced the privacy interest that government employees have in protecting their identities against the public interest in disclosure. In that case, an Army soldier sought the disclosure of the names and other identifying information that had been redacted from documents the soldier had received pursuant to a FOIA request. The information redacted could be used to identify Department of Defense employees who had investigated the soldier's allegations of misconduct by his commanding officers. Because release of the identities of the Department of Defense employees could subject them to harassment or embarrassment and because the release of the names would "shed little, if any, light on how the DOD conducted [the] investigation" of alleged misconduct, the court found that the information was exempt from disclosure under Exemption 7(C). *Id*. at 324.

1. Release of Inspectors' Identities

PETA contends that USDA should disclose the names of the federal inspectors stationed at an AgriProcessors kosher slaughter facility. According to an OIG report, Food Safety Inspection Service (FSIS) inspectors observed the inhumane slaughter of cattle and did nothing to stop it. Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Mot. ("Pl.'s Mem.") Ex. 48, OIG Report.[7] The report further found that certain inspectors accepted meat products from AgriProcessors' employees and "engaged in other acts of misconduct." *Id*. at 2. OIG discussed the

---

[7] PETA alleges that AgriProcessors slaughtered cattle inhumanely. According to a news report, after cattle were cut by a Rabbi pursuant to kosher slaughter methods, other workers pulled out the animals' tracheas with a hook to speed bleeding. Pl.'s Mem. Ex. 46, Donald G. McNeil, Jr., *Inquiry Finds Lax Federal Inspections at Kosher Meat Plant*, N.Y. Times, Mar. 10, 2006.

investigation with an Assistant U.S. Attorney ("AUSA") for the Northern District of Iowa; the AUSA declined to prosecute. *Id*. According to a news report, as a result of this investigation USDA suspended one of its inspectors and gave warning letters to two others. Pl.'s Mem. Ex. 46, Donald G. McNeil, Jr., *Inquiry Finds Lax Federal Inspections at Kosher Meat Plant*, N.Y. Times, Mar. 10, 2006. Relying on *Stern*, 737 F.2d 84, PETA argues that the identity of the inspectors should be released because the public has an overriding interest in knowing how USDA employees are performing their jobs.

PETA reads *Stern* too broadly. In *Stern*, the plaintiff sought disclosure of the names of three FBI employees who were investigated in connection with an alleged cover-up of illegal FBI surveillance of political activists. *Id*. at 86. The FBI had withheld the identities of its employees pursuant to the privacy provision of Exemptions 6 and 7(C). *Id*. The D.C. Circuit explained that in determining whether the privacy exemption applied, the court must consider both the level of responsibility held by the federal employee and the activity for which the employee had been censured. *Id*. at 92. Thus, although the public has an interest in knowing that a government investigation was comprehensive and that disciplinary measures were adequate, the court held that the FBI was not required to disclose the identity of two low-level employees who were not directly responsible for the alleged cover-up, but were only culpable for inadvertence and negligence. *Id*. at 92-93. The court stated, "[w]hile . . . the public has a strong interest in the airing of the FBI's unlawful and improper activities, we find that the public interest in knowing the identities of employees who became entwined inadvertently in such activities is not as great." *Id*. at 93. In contrast, the Circuit held that the identity of a higher-level official had to be disclosed. The official was a Special Agent in Charge who was found to have participated knowingly and deliberately in

the cover-up. *Id*. Applying the balancing test, the court held that "[t]he public has a great interest in being enlightened about . . . malfeasance by this senior FBI official — an action called "intolerable" by the FBI — an interest that is not outweighed by his own interest in personal privacy." *Id*. at 94.

More recently, the D.C. Circuit distinguished *Stern* in a case where the court did not require the release of records relating to the alleged criminal conduct of an AUSA. In *Jefferson v. Dep't of Justice*, 284 F.3d 172 (D.C. Cir. 2002), the court emphasized that the *Stern* court only required the release of the identity of a high-level official in the midst of a well-publicized scandal. In contrast, the court held in *Jefferson* that Exemption 7(C) protected from disclosure Department of Justice Office of Professional Responsibility records relating to the investigation into an AUSA's alleged criminal wrongdoing. The court found that the AUSA was not a high-level official and that the public interest in knowing about the AUSA's prosecution of an individual was not comparable to the public interest in the scandal in *Stern*. 284 F.3d at 180.

At issue in this case is the identity of low-level FSIS inspectors who engaged in misconduct in performing slaughterhouse inspections. Unlike *Stern*, the facts of this case do not present high-level employees or a well-publicized scandal. The inspectors have a privacy interest in records relating to disciplinary action against them, and disclosure of such records could subject them to embarrassment or harassment. *Halpern*, 181 F.3d at 296-97; *Stern*, 737 F.2d at 91. Moreover, disclosure of this information would not serve FOIA's purpose since it would do little to shed light on the activities of the USDA. PETA already has information related to how the USDA inspectors performed their duties and how they were disciplined. Release of the identities of the inspectors would not add to this in any meaningful way. *See O'Keefe*, 463 F. Supp. 2d at 324

(release of identities of investigators would do little to demonstrate how the DOD conducted the investigation). Thus, the identity of the FSIS inspectors in this case is exempt from disclosure under Exemption 7(C).

### 2. CD Recording of Witness's Telephone Call

PETA also seeks release of a CD audio recording of a witness's phone call to the USDA regarding the tiger attack on Roy Horn. USDA contends that the entire CD is exempt from disclosure based on the privacy interest of the caller because the caller could be identified by the sound of his/her voice. USDA further alleges that the information on the CD reveals nothing about USDA activities. Because the witness's privacy interest outweighs the public interest in disclosure, USDA claims the CD was exempt from disclosure. PETA contends that USDA's conclusory assertion that the CD does not relate to agency activities is insufficient to support a claim of exemption. The Court cannot determine based on the information before it whether the recording relates in any way to agency activities. Accordingly, USDA shall submit the CD recording to the Court for an in camera review.

### 3. Le Mas Location Information

PETA complains that USDA has redacted from affidavits the name of the state where the Le Mas ammunition testing on pigs took place. *See* Pl.'s Mem. Exs. 42 & 43. USDA has not cited a reason for such non-disclosure. Although USDA explained in its Vaughn Index that it redacted the names of federal employees and the names and addresses of persons being investigated, information that PETA does not seek with respect to the Le Mas claim, USDA does not acknowledge that it also redacted the information regarding the location of the incident being investigated. USDA does not address this issue in its motion to dismiss or for summary judgment or in its response to

PETA's cross-motion. Because USDA has not met its burden of showing that an exemption applies, the Court will require USDA to disclose this information. *See Goland*, 607 F.2d at 352 (agency must demonstrate that each document requested either has been produced, is unidentifiable, or is exempt).

### B. APA Claim

PETA contends that USDA acted in an arbitrary and capricious manner in violation of the APA by "adopting a policy and practice of withholding, under FOIA Exemption 6, FOIA Exemption 7(C), and the Privacy Act, witness affidavits and statements gathered as part its investigations of possible violations of . . . statutes administered by the agency . . . ." Am. Compl. ¶ 30. PETA alleges that Ms. Banks, Director of the Freedom of Information and Privacy Act Staff of APHIS, explained at a March 15, 2006, meeting with animal protection groups that she had changed practices put in place by her predecessor and that now APHIS redacted entire witness statements to protect the privacy of the witness. Pl.'s Statement of Facts ¶¶ 58-59. After PETA filed this suit, USDA released the witness statements and affidavits that PETA sought in its FOIA requests, with identifying information redacted.[8]

The APA authorizes judicial review only when the challenged agency action is final and when there is no other adequate remedy. 5 U.S.C. §§ 703-704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (APA does not provide additional remedies where adequate remedies are already provided). Thus, an APA claim is precluded where a remedy under FOIA is available. *Sierra Club v. Dep't of Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).

PETA contends that it may proceed under the APA because it is seeking prospective injunctive relief; it seeks an order from the Court precluding USDA from withholding the statements

---

[8] PETA asserts that it was required to expend considerable resources to file appeals and to file this suit in order to obtain these documents. Kettler Decl. ¶ 13 & 24.

in their entirety in the future. USDA contends that it does not have a policy or practice of withholding witness statements in their entirety. In support of this contention, USDA submitted the Declaration of Ms. Banks on behalf of APHIS and the Supplemental Declaration of Ms. MacNeil on behalf of USDA OIG. Ms. Banks indicated, "APHIS considers FOIA requests and appeals on a case by case basis. APHIS does not have an official policy or practice of categorically withholding documents, particularly witness statements or affidavits, in response to FOIA requests and appeals." Def.'s Mem. Ex. 1, Banks Decl. ¶ 47. Similarly, Ms. MacNeil indicated, "USDA OIG has not adopted a regulation or a policy and practice of withholding in their entirety statements of witnesses and USDA employees with regard to FOIA requests. FOIA requests received by USDA OIG are evaluated individually and processed according to the requirements of the FOIA and the Privacy Act, 5 U.S.C. § 552, 5 U.S.C. § 552a." Def.'s Mem. Ex. 5, MacNeil Supp. Decl. ¶ 4.

PETA's APA claim is moot. Pursuant to Article III of the Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Even where a suit presented a live controversy when filed, the mootness doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will not affect the parties' rights presently and will not have a "more-than-speculative" chance of affecting them in the future. *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990). A case is moot if a defendant can demonstrate that two conditions have been met: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it

did, the courts would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 189 (2000) (citations omitted; internal quotations and ellipses omitted). Even though the voluntary cessation of allegedly illegal conduct does not make a case moot, "[t]he case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S.630, 632 (1953) (citation omitted). Thus, in a suit to obtain prospective injunctive relief, a plaintiff must show a real and immediate threat of future injury in order to establish a viable case or controversy. *City of Los Angeles*, 461 U.S. at 103-04; *see Aulenback, Inc. v. Federal Highway Admin.*, 103 F.3d 156, 166-67 (D.C. Cir. 1997) (a case seeking injunctive and declaratory relief is not ripe for review where the plaintiff did not face direct and immediate sanctions, but only speculated as to potential future harm).

Here, PETA made a FOIA request for witness statements, and after initially withholding them, USDA released the witness statements with identifying information redacted. Release of the witness statements satisfied PETA's FOIA request. Further, there is no reasonable expectation that the alleged wrong will be repeated, as APHIS and OIG indicated that they do not have a practice of withholding entire witness statements and they review FOIA requests on an individual basis. At most PETA has presented evidence of a *past* practice of withholding entire witness statements. PETA has not demonstrated a threat of an immediate future injury.[9] *City of Los*

---

[9] If PETA had shown that the practice was ongoing, PETA likely would be able to challenge the practice. *See e.g.*, *Payne Enters. Inc. v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988) (Air Force had illegal practice of violating FOIA by routinely refusing to release information requested until an appeal was filed; such a practice caused an unreasonable delay that could be challenged under the APA); *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir. 1986) (plaintiff can make a facial challenge to DOJ's practice regarding fee waiver requests, even though the practice was informal, because the agency planned to continue the practice).

*Angeles*, 461 U.S. at 103-04. In sum, because interim relief has eradicated the effects of the alleged violation and there is no reasonable expectation that the alleged wrong will be repeated, *see Doe v. Harris,* 696 F.2d at 111, PETA's APA claim is moot. Accordingly, the APA claim will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, USDA's motion to dismiss or for summary judgment [Dkt. # 19] and PETA's cross-motion for summary judgment [Dkt. ## 21 & 29][10] will be granted in part and denied in part as follows: (1) the identities of the FSIS inspectors who inspected the AgriProcessors facility are exempt from disclosure; (2) the CD recording of the phone call to USDA from the witness to the tiger attack on Mr. Horn shall be submitted to the Court for an in camera inspection no later than June 25, 2007; (3) the information regarding the location of the Le Mas ammunition testing shall be disclosed no later than June 25, 2007; and (4) PETA's APA claim will be dismissed. A memorializing order accompanies this Memorandum Opinion.


Date:  June 11, 2007                                               /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge

---

[10] PETA's motion for summary judgment [Dkt. # 29] amended its original filing [Dkt. # 21].